**Donna JONES, et al., Appellants,**

v.

**Cleathern FULLER, individually and as Trustee for the Fuller 1991 Children's Trust, Appellee.**

No. 10–92–247–CV.

Court of Appeals of Texas, Waco.

June 16, 1993.

Rehearing Denied July 14, 1993.

---

**3.** $93,800 is 70% of the $134,000 the jury found Miller had suffered in actual damages.

Michael J. Simmang, Max E. Roesch, Michael J. Simmang, P.C., Giddings, for appellants.

James R. Witt, Witt & Taylor, Centerville, Cactus Jack Cagle, Cagle and Associates, Houston, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

This is a suit for a declaratory judgment, injunctive relief, damages, and attorney's fees. Donna Douthitt Jones and her brother, Cameron Douthitt, appeal a take-nothing judgment rendered in favor of Cleathern Fuller, individually and as trustee for the Fuller 1991 Children's Trust. They argue that they had valid and recorded express easements appurtenant across Fuller's tract and that he had constructive, actual, and inquiry notice of their easements. Furthermore, they contend the easements had not expired due to completion of purposes or impossibility. They also argue that if they did not have an easement under the deeds then they have an easement by prescription. We reverse the take-nothing judgment and render judgment that Donna and Cameron have easements appurtenant across Fuller's tract. However, we sever and remand a portion of the cause for a trial on injunctive relief, damages and attorney's fees.

## BACKGROUND

B.D. Douthitt had several children, only three of whom are involved in this case: Donna Douthitt Jones, Cameron B. Douthitt, and James (Stubby) Douthitt. During the years between 1970 and 1975, B.D. conveyed all of his rural real estate holdings in Leon County to his children by gift deeds. Donna was given the Saunders Riley Survey; Cameron was given the McGruder Survey; and James was given the Warrick Martin Survey. (See Appendix Map). Each gift deed recited: "The Grantor herein [B.D. Douthitt] is by deed of even date herewith conveying an undivided interest in and to certain lands and premises owned by him to his other children and which deeds will be filed for record in the office of the County Clerk of Leon County, Texas...." In each of the deeds, except one, B.D. also included the following:

Grantor [B.D. Douthitt] does hereby convey to the Grantee herein and to her [or his] heirs, executors, administrators and

assigns the right, privilege and as an appurtenance to the lands and premises herein described to the free and uninterrupted use, liberty and privilege together with an easement and right of way for passage in, along, over and across any and all lands now owned and/or right of ways and easements now owned or to which Grantor might have a right of way and easement to reach the hereinabove described lands and premises in order that the Grantee herein and the Grantees in the other deeds mentioned herein may have a free, unobstructed and uninterrupted passageway and easement to and from a public road and across the lands owned and/or claimed by the Grantor herein to reach the lands herein and hereby conveyed from a public road or a means of ingress and egress to and from the hereinabove described lands and premises.

The land in controversy is part of the land deeded to James, who allowed Donna and Cameron to cross his land to reach their tracts. James' widow, Jessie, deeded a portion of the property in the northwest corner of the Warrick Martin Survey to B.D. Douthitt. This piece of land, called the "estate property," is approximately 4.69 acres in area. After severance of the estate property, the remainder of the Warrick Martin Survey was approximately 236.97 acres. This 236.97 acres is the land that Cleathern Fuller, the appellee, purchased from Jessie in 1991 and is the subject of this suit. Fuller purchased the land in the name of the Fuller 1991 Children's Trust.

Two roads exist on the Warrick Martin Survey owned by Fuller. One road, called the "red-line road" at trial, crosses a small portion of the survey and then runs along the north boundary of the estate property. The second, referred to as the "green-line road," crosses the middle of the Warrick Martin Survey. Also on the property is a short road that leads from the cattle guard at the entrance of the Warrick Martin Survey to the intersection of the green- and red-line roads. The roads are shown on the map in the Appendix.

At the time of the original conveyances, the green-line road, which was created in the mid to late 1970s, had been used by the Douthitt family and their tenants to reach their various surveys. This was also true of the road from the cattle guard to what is now the intersection of the green- and red-line roads. The red-line road was created only after the Warrick Martin Survey was conveyed to James and before its purchase by Fuller.

There is evidence that the purpose of the red-line and green-line roads was to provide a means of ingress and egress to the tracts owned by the Douthitt family. Jessie testified that, prior to James' death in 1980, no one was allowed to cross the Warrick Martin Survey except by using the red-line road. The only exception, she said, was when the red-line road became impassable for a short period of time. Only then were the Douthitt family members allowed to use the green-line road.

In December 1975, Cameron Douthitt conveyed a portion of the McGruder Survey to his sister, Delois McLain, and her husband. In 1984, the McLains granted Donna an easement across the McLain tract to access her property. (See Appendix). Donna testified that this easement was merely to designate the original green-line road as the only easement to be used across the McGruder Survey. The same type of agreement, i.e., to designate the road to be used on a pre-existing easement, was also entered into between Cameron and his siblings.

Donna testified that she also requested an easement from Jessie over the section of road from the cattle guard to the intersection of the green- and red-line roads. In return for Jessie's promise to grant the easement, Donna said she gave her an easement across the estate property on the red-line road. However, Donna said that Jessie never granted the promised designated easement. The estate property was eventually conveyed by Donna, the executor of B.D.'s estate, to Cameron, Donna, and Delois in March 1991.

In February 1991, Jessie sold the Warrick Martin Survey to Cleathern Fuller.

Prior to the sale, Fuller made a physical inspection of the land and saw that each road was used frequently. Moreover, he was aware that the Douthitt family was using the cattle guard for ingress and egress to their property.

The earnest-money contract between Jessie and Fuller provided that easements to the property were to be determined by the title policy. The title policy specifically excepted to "those roads shown on survey plat prepared by Lusher Surveying Co., R.P.S. No. 2510." The Lusher survey plat clearly designated the green-line road as a "road used by others." Moreover, the warranty deed from Jessie to the Fuller 1991 Children's Trust conveyed the land subject to "any and all easements, covenants, rights-of-way ... pertaining to the above described property ... either shown of record in the office of the County Clerk of Leon County, Texas or apparent on the property...." In addition, the deed of trust from the Children's Trust contained this subject-to clause.

Fuller testified that he had not read the title policy or the warranty deed. Furthermore, he claimed that he did not discuss the title policy, warranty deed, or survey plat with his attorney. He did, however, review three easements in his favor with his attorney. Fuller also admitted that he purchased the property subject to the title policy exceptions to the roads shown on the Lusher plat and subject to the terms of the deed of trust.

Donna contacted Fuller after he purchased the property and asked him for a designated easement through the cattle guard to the intersection of the green- and red-line roads. In return, she and her siblings executed and forwarded to Fuller a designated easement over the estate property on the red-line road. However, Fuller and the Douthitt family could not agree on the terms of the easement over Fuller's property. On May 6, 1991, Fuller sent a letter to Donna explaining his position. In the letter, he refers to Donna's, Cameron's, and Delois' easement across his property.

Subsequently, Fuller locked the Douthitts out of the Warrick Martin Survey at least three different times. Each time, the Douthitts cut or removed the locks to gain access to their property. Fuller then blockaded the cattle guard in an attempt to permanently prevent access to the Douthitts. After Fuller blocked the cattle guard, he used another entrance and crossed the estate property to access his own property.

Donna and Cameron filed suit in July 1991 requesting that the court declare their recorded easements to be valid and to restrain Fuller from further "lock outs." They also sought damages and attorney's fees. The court, however, rendered a take-nothing judgment in favor of Fuller after a bench trial.

In their first point, Donna and Cameron argue that they have valid and recorded express easements appurtenant across Fuller's tract as a matter of law and that he had constructive, actual and inquiry notice of the easements as a matter of law. Thus, they contend the court erred in entering a take-nothing judgment against them as a matter of law. Fuller argues that B.D. Douthitt attempted to reserve easements to "strangers" to his deeds to James and that the attempted reservations are thus invalid.

## CONSTRUCTION OF THE DEEDS

DEEDS CONSTRUED AS ONE INSTRUMENT

■ As a general rule, several instruments comprising a single transaction are to be construed together. *Terrell v. Graham,* 576 S.W.2d 610, 611 (Tex.1979). Deeds executed at the same time between the same parties and in reference to the same subject should be interpreted together. *Id.* Moreover, instruments that are shown to be component parts of a single transaction are read together. *Rudes v. Field,* 146 Tex. 133, 204 S.W.2d 5, 7 (1947).

■ B.D. Douthitt clearly pointed out in each deed executed each year that he was simultaneously executing other deeds conveying land to his children and that all of the deeds were to be recorded in Leon County. Thus, all of the deeds for each year are necessarily intertwined by the grantor's express references. We hold as

a matter of law that the deeds executed simultaneously each year are component parts of a single transaction and are to be read and interpreted together as though they are one instrument. *See id.* Accordingly, none of the Douthitt children are "strangers" to each other's deeds.

RULES OF CONSTRUCTION

■ Rules applicable to the construction of deeds also apply to the construction of easements. *Armstrong v. Skelly Oil Co.*, 81 S.W.2d 735, 736 (Tex.Civ.App.—Amarillo 1935, writ ref'd). In construing deeds, the intention of the parties ascertained from consideration of all parts of the instrument must be given effect, when possible, and prevails over arbitrary rules. *Garrett v. Dils Company*, 157 Tex. 92, 299 S.W.2d 904, 906 (1957).

B.D. DOUTHITT'S INTENT

Over a five-year period B.D. deeded all of his land to his children. All of the deeds to James, with one exception, contained this identical provision:

> Grantor [B.D. Douthitt] does hereby convey to the Grantee herein and to her [or his] heirs, executors, administrators and assigns the *right, privilege* and as an *appurtenance to the lands and premises herein described to the free and uninterrupted use, liberty and privilege together with an easement and right of way for passage* in, along, over and across any and all lands now owned and/or right of ways and easements now owned or to which Grantor might have a right of way and easement to reach the hereinabove described lands and premises in order that the *Grantee herein and the Grantees in the other deeds mentioned herein* may have a *free, unobstructed and uninterrupted passageway and easement* to and from a public road and across the lands owned and/or claimed by the Grantor herein to reach the lands herein and hereby conveyed from a public road or *a means of ingress*

*and egress* to and from the hereinabove described lands and premises. (Emphasis added).

■ The italicized language shows that B.D. Douthitt clearly intended to create an easement by express grant in the grantees of the deeds executed each year. When the intent of the grantor is clear, as here, neither the trial court nor this court can ignore the rights created by the express grant. *See Seastrunk v. Walker*, 156 S.W.2d 996, 997 (Tex.Civ.App.—Waco 1941, writ ref'd w.o.m.). He intended the easements to be "[appurtenant] to the lands and premises [therein] described"—i.e., appurtenant to the estates described in the deeds to his children. Thus, interpreting all of the deeds executed in the same year as one instrument, we hold as a matter of law that B.D. Douthitt created by express grant an easement in Donna and Cameron to cross James' property.[1] The easements are appurtenant to Donna's and Cameron's tracts. *See Stuart v. Larrabee*, 14 S.W.2d 316, 319 (Tex.Civ.App.—Beaumont 1929, writ ref'd) (holding that an appurtenant easement is an incident of the estate granted and passes with it).

LOCATION

■ That B.D. Douthitt left the exact location of the easements undescribed does not affect their validity because James' tract is adequately described. *See Elias v. Horak*, 292 S.W. 288, 290 (Tex.Civ.App.—Austin 1927, writ ref'd). The roadway, beginning at the cattle guard and along the green-line road, was already in existence and being used to access the tracts now owned by Donna and Cameron when B.D. executed the deeds to James. This established the roadway as the location of the easements, and Donna and Cameron cannot be compelled to accept another. *See id.* ("When a right of way is granted over certain land without fixing its location, but there is a way already located at the time of the grant, this will be held to be the location of the way granted, and the grant-

---

1. Although unnecessary to our disposition, we note in passing that B.D. Douthitt likewise intended to grant James an appurtenant easement across the property conveyed to Donna and Cameron.

ee cannot be compelled to accept a substitute therefor").

PURPOSE AND USE

▮ A proper construction of the terms of the grant, considered in the light of attending circumstances, determines the purpose or extent of the right of use of an easement. *Kearney & Son v. Fancher*, 401 S.W.2d 897, 905 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.). B.D. Douthitt expressed the purpose of the easement in this language: a "free, unobstructed and uninterrupted passageway and easement to and from a public road and across the lands owned and/or claimed by the Grantor herein to reach the lands herein and hereby conveyed from a public road or a means of ingress and egress to and from the hereinabove described lands and premises."

As already noted, the green-line road—from and through the cattle guard—was being used by the Douthitt family as the means of access from the public road to the property conveyed to Donna and Cameron when B.D. deeded the property to James. In fact, this was the only developed means of ingress and egress. Considering the circumstances surrounding the grants, B.D. Douthitt clearly intended to burden James' property with easements to be used as a (1) means of accessing a public road through the cattle guard *or* as a (2) means of ingress and egress through the cattle guard to the tracts conveyed to Donna and Cameron.

NOTICE THROUGH RECORDATION

▮ Next, we must determine whether Fuller was charged with notice of the easements. He claims that he is a bona fide purchaser of the property because he had no notice of the claimed easements. *See Lefevere v. Sears*, 629 S.W.2d 768, 773 (Tex.App.—El Paso 1981, no writ). A bona fide purchaser of the servient estate without actual or constructive notice of the existence of an easement takes title free from its burden. *Etex Tel. Co-op., Inc. v. Sanders*, 607 S.W.2d 278, 281 (Tex.Civ. App.—Texarkana 1980, no writ); *Lesley v.*

*City of Rule*, 255 S.W.2d 312, 315 (Tex.Civ. App.—Eastland 1953, writ ref'd n.r.e.).

▮ Notice may be actual or constructive. *Farmers Mut. Royalty Syndicate v. Isaacks*, 138 S.W.2d 228, 231 (Tex. Civ.App.—Amarillo 1940, no writ). A purchaser has actual notice if he has or should have express knowledge of an adverse right, *Id.*, or if such knowledge may be implied. *See Continental Credit Corporation v. Norman*, 303 S.W.2d 449, 455 (Tex. Civ.App.—San Antonio 1957, writ ref'd n.r.e.). A purchaser of real property is constructively charged with notice of the existence of instruments recorded in the county where the property is situated and of instruments constituting his chain of title, whether or not they are recorded. TEX.PROP.CODE ANN. § 13.002 (Vernon 1984); *Tuggle v. Cooke*, 277 S.W.2d 729, 731 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.). Thus, an instrument that is properly recorded in the proper county is notice to all persons of its existence. TEX. PROP.CODE ANN. § 13.002.

▮ Here, the deeds to the Douthitt children were properly recorded. Because the deeds executed each year are construed together as one deed, *see Terrell*, 576 S.W.2d at 611, all are in Fuller's chain of title. *See Tuggle*, 277 S.W.2d at 731. Therefore, Fuller had constructive notice of the easements on the Warrick Martin Survey as a matter of law. *See* TEX.PROP.CODE ANN. § 13.002; *Williams v. Thompson*, 152 Tex. 270, 256 S.W.2d 399, 403 (1953).

TERMINATION OF EASEMENTS

▮ An easement granted for a particular purpose terminates when its purpose ceases to exist or is completed or when the easement is abandoned or rendered impossible of performance. *Fancher*, 401 S.W.2d at 906. Fuller contends the easements have terminated due to completion of purpose or impossibility of performance. He concedes on appeal, however, that Donna and Cameron never abandoned the claimed easements. Donna and Cameron reply to these contentions under their third and fifth points.

COMPLETION OF PURPOSE

 Essentially, Fuller argues that the easements across his land have terminated because the public road is contiguous to the estate property and Donna and Cameron now have access to the public road by means of the red-line road that runs through the estate property. This argument is fallacious for several reasons. First, Donna's tract is not contiguous to the estate property. In fact, the public road is no more contiguous to Donna's and Cameron's tracts now than it was when the easements were created. Second, there is no evidence that circumstances surrounding the right to use the cattle guard to gain access to the public road have changed since the easements were created. We hold as a matter of law that the easements have not terminated by completion of their purpose.

IMPOSSIBILITY OF PERFORMANCE

Fuller also contends the easements have terminated due to the impossibility of their performance. We reject this contention for the reasons stated in connection with the disposition of the immediately preceding argument.

## TRIAL COURT'S FINDINGS AND CONCLUSIONS

Among the "findings" filed by the trial court are these legal conclusions:

- No easement appurtenant was created across Fuller's tract by James' deeds.
- James' deeds did not give Fuller constructive or inquiry notice of the easements.
- Fuller had no constructive or inquiry notice of the easement shown on the Lusher survey made in January 1991.

As already noted, the evidence conclusively establishes that B.D. Douthitt burdened James' property with easements appurtenant to Donna's and Cameron's tracts for the purpose of providing them with access by the green-line road and the cattle guard to a public road and as a means of ingress and egress to their property. Fuller had constructive notice of these easements through his chain of title as a matter of

law. Likewise, the evidence conclusively establishes that Fuller purchased James' property subject to the easement (i.e., the green-line road) shown on the Lusher survey. Thus, we are not bound by the court's erroneous legal conclusions listed above. *See Scholz v. Heath*, 642 S.W.2d 554, 559 (Tex.App.—Waco 1982, no writ).

Nor are we bound by these erroneous legal conclusions:

- Easements created by any express grant terminated either by completion or failure of purpose, by abandonment or by impossibility of performance.
- The deeds failed to adequately describe any easements.

Validity of the easements was not affected as a matter of law by the failure to specify their exact location on the ground. Likewise, the easements have not terminated as a matter of law.

Accordingly, we sustain the first point in which Donna and Cameron contend the court erred as a matter of law when it rendered a take-nothing judgment against them. Moreover, they are entitled as a matter of law to a declaratory judgment that they have easements appurtenant across Fuller's tract. We also sustain point two in which they attack the conclusion that the easements were inadequately described. Points three through six, attacking the erroneous conclusions relating to termination of any easements created by express grant, are also sustained. We do not, however, reach point seven relating to an easement by prescription.

## OBLIGATION OF THE PARTIES

 As owner of the servient estate, Fuller 1991 Children's Trust owes the duty of using its property in a manner that will not impair or destroy the paramount right of use in Donna's and Cameron's dominant estates. *See Kelsay v. Lone Star Gas Co.*, 296 S.W. 954, 957 (Tex.Civ. App.—Dallas 1927, writ dism'd). On the other hand, Donna and Cameron owe the duty of using ordinary care not to injure the servient estate. *See J.M. Huber Petroleum Co. v. Yake*, 121 S.W.2d 670, 674

(Tex.Civ.App.—Amarillo 1938, no writ). Any repairs and maintenance of the easements will be the duty and at the expense of the dominant estates. *See Sun Pipe Line Co., Inc. v. Kirkpatrick*, 514 S.W.2d 789, 792 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.).

## DISPOSITION

We sever the action for a declaratory judgment from the cause of action for injunctive relief, damages, and attorney's fees. *See* TEX.R.APP.P. 80(c). The judgment that Donna and Cameron take nothing is reversed. *See id.* at 80(b). Moreover, we render judgment against Fuller, individually and as trustee of the Fuller 1991 Children's Trust, and against the Fuller 1991 Children's Trust that Donna and Cameron each have valid easements appurtenant across the property now owned by the Fuller 1991 Children's Trust; that the appurtenant easements are coextensive with the road beginning at the cattle guard and then along the green-line road to its intersection with the common boundary line of the Warrick Martin Survey and McGruder Survey. *See id.* at 81(c). Finding that the action for injunctive relief, damages, and attorney's fees is clearly separable, without unfairness to the parties, from the declaratory-judgment proceeding on which we have rendered judgment, we remand the cause of action for injunctive relief, damages, and attorney's fees for a new trial. *See id.* at 81(b)(1).