

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00137-CV

**ETC TEXAS PIPLINE, LTD,**

                                                            **Appellant**

 **v.**

**GRACE MOORE PAYNE,**

                                                            **Appellee**

―――――――

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 09-002381-CV-85

―――――――

## MEMORANDUM  OPINION

―――――――

In this declaratory-judgment action, appellant, ETC Texas Pipeline, Ltd. ("ETC"),

complains about the trial court's judgment in favor of appellee, Grace Moore Payne.  In

three issues, ETC argues that:   (1) the trial court erred in its interpretation of the

underlying agreement, which described the easement at issue in this case; (2) the

evidence supporting the trial court's interpretation of the agreement is legally and

factually insufficient; and (3) the trial court improperly reformed the agreement without

the appropriate pleadings to require ETC to remove the pipeline on Moore's property

and to essentially grant a permanent injunction in Moore's favor without "the appropriate pleading or evidentiary requirements." We affirm, in part, and reverse and render, in part.

## I. BACKGROUND

On August 23, 1995, Tom J. Moore Farms, a partnership and predecessor-in-interest to Payne, conveyed a right-of-way and easement to Ferguson Burleson County Gas Gathering System ("Ferguson"), the predecessor-in-interest to ETC. The agreement allowed Ferguson and subsequently ETC "to construct, maintain, operate, repair, alter, replace, change the size of and remove pipelines and appurtenant facilities for the transportation of oil, gas, petroleum products or any other liquids, gases or substances which can be transported through a pipeline across, under and upon" Payne's land. The agreement also included the following habendum clause: "TO HAVE AND HOLD unto GRANTEE [Ferguson and later ETC], its successors and assigns, so long as the rights and easements herein granted, or any one of them shall be used by, or useful to, GRANTEE for the purpose herein granted . . . ." In addition, the agreement specifically stated that, "[i]n the event of continuous non-use of said pipeline by grantee, its successors or assigns, for a period of 18 months, this easement shall be considered to be abandoned and shall revert to Grantor . . . ."

In 1996, a four-inch, high-pressure pipeline approximately 1.25 miles long was installed from the UPRC Glover #1 well (the "Glover well") to a ten-inch pipeline at White Switch Road. A segment of this pipeline runs across Payne's land. On or about November 20, 2002, the pipeline was converted from a high-pressure line to a low-

pressure line. In doing so, ETC connected the pipeline to a Duke/DCP pipeline at a point approximately halfway between the Glover well and the tap at the White Switch Road station. This connection is not on Payne's land and re-routed gas away from the portion of the pipeline situated on Payne's land. In fact, witnesses testified that gas had not traveled through the pipeline on Payne's land since the pipeline had been re-routed. ETC also removed an above-ground spool piece and capped the pipeline on Payne's land, which resulted in a gap in the original pipeline. ETC alleges that this alteration is not permanent and can be reinstalled at any time to allow the gas to flow once again directly from the Glover well to the White Switch Road station.

Believing that ETC had abandoned the easement, Payne filed a declaratory-judgment action to determine the rights and responsibilities of the parties under the agreement. Payne alleged that the right-of-way and easement agreement had terminated due to alleged non-use by ETC and, in her first amended petition, requested that, among other things, the trial court order ETC to remove the pipeline on her property and restore the property to its original condition.

On January 14, 2011, the trial court conducted a bench trial on this matter. The trial court concluded that the agreement had terminated due to non-use and required ETC to remove the pipeline from Payne's property within six months and return Payne's property to its original condition. Shortly thereafter, the trial court entered findings of fact and conclusions of law. ETC subsequently filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II. STANDARD OF REVIEW

Declaratory judgments are reviewed under the same standards as all other judgments. TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008); *see In re Schiwetz*, 102 S.W.3d 355, 365 (Tex. App.—Corpus Christi 2003, no pet.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Guthery v. Taylor*, 112 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Roberts v. Squyres*, 4 S.W.3d 485, 488 (Tex. App.—Beaumont 1999, pet. denied). Here, the trial court determined the declaratory-judgment issues after a bench trial; thus, we apply a sufficiency of the evidence review to the trial court's factual findings and review its conclusions of law de novo. *See Montfort v. Trek Res., Inc.*, 198 S.W.3d 344, 354 (Tex. App.—Eastland 2006, no pet.) (citing *Black v. City of Killeen*, 78 S.W.3d 686, 691 (Tex. App.—Austin 2002, pet. denied)).

A trial court's findings of fact in a bench trial "have the same force and dignity as the jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Further, "[w]hen the trial court acts as a fact[-]finder, its findings are reviewed under legal and factual sufficiency standards." *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000).

In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the trial court's finding. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact-finder] to reach the [conclusion] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We

must credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* The fact-finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Id.* at 819.

In a factual sufficiency review, we must consider and weigh all of the evidence in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The evidence is factually insufficient only if we conclude "that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some evidence of probative force in support of the verdict." *Id.* Fact findings are not conclusive when, as in this case, a complete reporter's record appears in the record if the contrary is established as a matter of law or if there is no evidence to support the finding. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

We review the trial court's conclusions of law de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Conclusions of law are upheld if the judgment can be sustained on any legal theory the evidence supports. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied); *see also Fulgham v. Fischer*, No. 05-10-00097-CV, 2011 Tex. App. LEXIS 5865, at *6 (Tex. App.—Dallas July 29, 2011, no pet. h.). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ); *see also Fulgham*, 2011 Tex. App. LEXIS 5865, at *6.

Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Westech Eng'g, Inc.*, 835 S.W.2d at 196.

### III. THE AGREEMENT AND CONTRACT CONSTRUCTION

In its first issue, ETC challenges the trial court's first three conclusions of law, arguing that the trial court's interpretation of the contract is erroneous and fails to adhere to applicable law regarding contract construction. In particular, ETC asserts that the easement remains valid and effective because it is still being used by ETC and it remains useful to ETC.

### A. Applicable Law

An easement is an interest in land and carries with it some right to use, or benefit from, the land for a specified purpose. *Gollinger v. State*, 834 S.W.2d 553, 555-56 (Tex. App.—Houston [14th Dist.] 1992, no writ). Easement agreements are interpreted according to the rules of contract construction and interpretation. *Kothmann v. Rothwell*, 280 S.W.3d 877, 880 (Tex. App.—Amarillo 2009, no pet.) (citing *Boland v. Natural Gas Pipeline Co. of Am.*, 816 S.W.2d 843 844 (Tex. App.—Fort Worth 1991, no writ)). In construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam); *Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 680 (Tex. App.—Dallas 2008, no pet.). We discern intent from the agreement itself and the agreement must be enforced as written. *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the

provisions with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 312. This consideration comes "'from a utilitarian standpoint bearing in mind the particular business activity sought to be served,'" and we will "'avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Id.* (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). Further, "all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999).

Whether an agreement is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing at the time the contract was entered. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *Ganske v. Spence*, 129 S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.). An ambiguity does not arise simply because the parties interpret the contract differently. *Seagull Energy E & P, Inc. v. Eland Energy*, 207 S.W.3d 342, 345 (Tex. 2006); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Eland Energy*, 207 S.W.3d at 345. If the agreement can be given a certain or definite legal meaning or interpretation, it is not ambiguous, and we will construe it as a matter of law. *Coker*, 650 S.W.2d at 393.

Here, neither the parties nor the trial court found this agreement to be ambiguous, and we likewise agree that it is not. Therefore, we construe the agreement's meaning as a question of law. *Id.* at 394; *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d

223, 227 (Tex. 2003) (holding that the interpretation of an unambiguous contract is a question of law for the court to decide). "The intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as written." *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.). A court will not change a contract merely because the court or one of the parties comes to dislike its provisions or thinks that something else is needed. *Id.*

"A proper construction of the terms of a grant, considered in the light of attending circumstances, determines the purpose or extent of the right of use of an easement." *Kothmann*, 280 S.W.3d at 880; *Jones v. Fuller*, 856 S.W.2d 597, 603 (Tex. App.—Waco 1993, writ denied); *Kearney & Son v. Fancher*, 401 S.W.2d 897, 905 (Tex. Civ. App.—Fort Worth 1966, writ ref'd n.r.e.). In addition, if a term in a conveyance is not specifically defined, that term is given its plain, ordinary, and generally accepted meaning. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

**B. Discussion**

In its first three conclusions of law, the trial court found:

(1) "The easement in question expressly states and the facts and circumstances substantiates [sic] that the only purpose and the only rights granted by the easement was—'to construct—pipelines—for the transportation of oil, gas—across—the lands of Grantor [Payne].'"

(2) "The easement in question expressly states that the Grantee [ETC] was to have and to hold said easement 'so long as—' the easement was—'used by or useful to, Grantee for the <u>purpose</u> <u>herein</u> <u>granted</u>—.'"

(3) "The easement has terminated because the easement in question has not been used for <u>the</u> <u>purpose</u> it was granted for, i.e. transportation of oil, gas— across—the lands of Grantor since November, 2002."

(Emphasis in original).

### 1. The Trial Court's First Conclusion of Law

With respect to the trial court's first conclusion of law, ETC argues that the trial court's interpretation constrained it to only constructing pipelines on Payne's land rather than maintaining, operating, repairing, altering, replacing, changing the size of, and removing pipelines, as the agreement states. ETC also asserts that, unlike the trial court's interpretation, the purposes under the agreement "are not limited to transportation of materials across, under and upon the lands of the grantor." ETC further contends that the trial court's interpretation of the agreement improperly imposed a limitation which excluded "most solid materials such as coal, lignite, or similar minerals and making the easement subject to liquid and gaseous substances."

When considering the attending circumstances, as we must do, we find that the purpose for obtaining the easement was to facilitate the construction of a pipeline from the Glover well to the White Switch Road station for the transportation of gas along the pipeline. *See Kothmann*, 280 S.W.3d at 880; *Jones*, 856 S.W.2d at 603; *Fancher*, 401 S.W.2d at 905. The pipeline that was constructed ran across Payne's land and transported gas, which demonstrates ETC's need for the easement agreement.[1] This is especially true given the fact that Exhibit A, which was incorporated as part of the agreement,

---

[1] The record contains no evidence that the pipeline was used to transport anything other than natural gas.

repeatedly references the specifics of constructing a pipeline on Payne's land. *See Parks*, 1 S.W.3d at 102. Essentially, our reading of the agreement yields a finding that the parties' intent behind the agreement was for the right to construct a pipeline along a portion of Payne's land for the transportation of gas. *See Frost Nat'l Bank*, 165 S.W.3d at 311-12; *Carbona*, 266 S.W.3d at 680; *Deep Nines, Inc.*, 246 S.W.3d at 846. Therefore, we disagree with ETC's assertions that the trial court's first conclusion of law is erroneous and somehow altered the meaning of the agreement. *See Stable Energy, L.P.*, 999 S.W.2d at 547; *see also Fulgham,* 2011 Tex. App. LEXIS 5865, at *6.

### 1. The Trial Court's Second and Third Conclusions of Law

ETC's complaints about the trial court's second and third conclusions of law are substantially similar to the arguments made in its second issue on appeal and center on the habendum clause and whether the easement was in use. According to ETC, the language in the habendum clause, which states that the agreement remains effective "so long as the rights and easements herein granted, or any one of them shall be used by, or useful to GRANTEE for the purpose herein granted," undermines the trial court's conclusion that the easement terminated. Specifically, ETC notes that the "evidence conclusively establishes that ETC has continuously used its right to maintain the Pipeline by cathodically protecting and pressurizing the Pipeline to ensure that it remain effective to transport the natural gas contained within." In making these contentions, ETC relies heavily on the decision in *Stephenson v. Vastar Resources, Inc.*, 89 S.W.3d 790 (Tex. App.—Corpus Christi 2002, pet. denied).

In *Stephenson*, a pipeline operator deactivated and purged gas from a 16.5-mile section of a pipeline that was subject to a two-year non-use termination clause. *Id.* at 793. Though gas was purged from the pipeline and the pipeline was deactivated, the operator continued to use the pipeline by "maintaining, use of cathodic protection, inspection (by walking and aerial), mowing, cutting and keeping up the pipeline and right-of-way." *Id.* The *Stephenson* court agreed that the actions taken by the operator constituted "use" of the pipeline, and thus, the two-year non-use termination clause was not applicable. *Id.* at 794.

Here, Charles Moody, formerly a construction foreman for ETC, testified that he is familiar with the pipeline running from the Glover well to the White Switch Road station. Moody noted that the Duke/DCP pipeline was not constructed on Payne's property and that the pipeline intersected with the main pipeline. In 2002, when the Duke/DCP pipeline was connected to the main pipeline, a section of the main pipeline that is on Payne's property was removed. The remaining pipeline was capped so that no materials would continue to flow towards the White Switch Road station. Moody denied cathodically protecting the portion of the pipeline on Payne's property, but he alleged that Bennie Lloyd, the operations foreman for ETC, told him that the whole pipeline had been cathodically protected. Moody stated that the pipeline had been pressure-tested and maintained, though he later admitted that he did not have first-hand knowledge of the tests or maintenance. Moody also stated that Jim McFarland, a contract administrator for ETC, told him that the company planned to reconnect the portion of the main pipeline on Payne's land. When pressed for details about the

possible reconnection, Moody was unable to recall the entire conversation he had with McFarland. Later, Moody admitted that it was impossible for gas to flow through the pipeline from the Glover well to the White Switch Road station because of the removed portion of the pipeline.

Lloyd also testified, and when asked about the process of cathodically protecting the main gas pipeline, Lloyd admitted that he did not have anything to do with it and that such protection would be the responsibility of another department. Lloyd had no knowledge of the pipeline ever being cathodically protected. Lloyd acknowledged that ETC had not pressure-tested the portion of the pipeline on Payne's land since 2002 and that he did not have any knowledge of maintenance being performed on that segment of the pipeline since the pipeline had been capped. Lloyd also admitted that ETC records showed that no gas had flowed through the pipeline on Payne's property since November 2002, and that no ETC employees had "stepped foot" on Payne's property after November 2002.

Considering the attending circumstances pertaining to the easement, we note that ETC has not proffered any evidence to show that the portion of the pipeline on Payne's property had been maintained, cathodically protected, or inspected since it had been deactivated in November 2002. It does not appear as if the pipeline had been used by ETC since November 2002. In fact, Lloyd admitted that no ETC employees had even "stepped foot" on Payne's property to service the pipeline since November 2002. Given the absence of evidence demonstrating ETC's continuous usage of the pipeline, we find that the *Stephenson* decision is inapplicable in this case. Furthermore, it is important to

note that the easement in *Stephenson* did not define "use," whereas the habendum clause in this case limits ETC's "use" of the easement "for the purpose herein granted," which, as we described above, was for the construction of a pipeline for the transportation of gas.

Moreover, while we recognize that "[e]very easement carries with it the right to do whatever is reasonably necessary for full enjoyment of the rights granted," ETC's interpretation of the habendum clause to mean that the easement is still in effect because it may still be useful to ETC does not comport with the terms of the agreement. *Whaley v. Cent. Church of Christ*, 227 S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2007, no pet.). If we were to adopt ETC's interpretation of the agreement, the term of the agreement likely would be perpetual and we would ostensibly eviscerate the eighteen-month non-use termination clause. *See Hubert v. Davis*, 170 S.W.3d 706, 712 (Tex. App.—Tyler 2005, no pet.) ("Yet, while not revocable at will, easements do not necessarily run in perpetuity. A determinable easement may be created that will terminate on the happening of a particular event.") (citing *Sentell v. Williamson County*, 801 S.W.2d 220, 222 (Tex. App.—Austin 1990, no writ)); *see also Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974) ("Without pleadings and evidence of surrounding circumstances, [grantees] are entitled to the rights granted by the instrument, and no more."). When construing a written agreement, we are to harmonize all of the provisions of the agreement so as to not render any provision meaningless. *See Frost Nat'l Bank*, 165 S.W.3d at 312. Because ETC's interpretation would render the eighteen-month non-use termination clause meaningless, we cannot adopt ETC's interpretation.

*See id.* Based on the foregoing, we cannot say that the trial court's second and third conclusions of law are erroneous. *See Stable Energy, L.P.*, 999 S.W.2d at 547; *see also Fulgham,* 2011 Tex. App. LEXIS 5865, at *6. We overrule ETC's first issue.

## IV. THE SUFFICIENCY OF THE EVIDENCE SUPPORTING THE TRIAL COURT'S FINDINGS OF FACT

In its second issue, ETC argues that the evidence demonstrates that the easement has been used continuously for the purpose for which it was granted; thus, the trial court's twelfth finding of fact is not supported by legally and factually sufficient evidence. ETC further argues that: (1) it regularly maintains, pressurizes, cathodically protects the pipeline, and at least partially uses the pipeline to transport gas; and (2) the possibility of reconnecting the pipeline demonstrates that the pipeline is still useful to ETC.

In its twelfth finding of fact, the trial court specifically noted that: "The pipeline in question has not been used to transport gas across Plaintiff's property since November, 2002 or five (5) times the eighteen (18) months [sic] period stated by Paragraph 11 to be considered abandonment." As noted earlier, ETC's second appellate issue is similar in substance to the arguments made with respect to the trial court's second and third conclusions of law. We have already detailed the testimony of Moody and Lloyd and found no evidence that ETC "used" the portion of the pipeline existing on Payne's property since November 2002, a term exceeding the eighteen months required for the abandonment provision to apply. Furthermore, with respect to ETC's argument that the pipeline still could be used because of the possibility of reconnection,

we note that Moody could not recall any details from a six-month-old conversation with McFarland as to when the pipeline will be re-connected to transport gas to the White Switch Road station and that adopting such an interpretation of the agreement likely would lead to a perpetual easement in favor of ETC. Viewing the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable fact-finder could have concluded that the easement had terminated pursuant to paragraph 11 of the agreement; thus, we hold that the evidence is legally sufficient to support the trial court's finding. *See Reyes*, 272 S.W.3d at 592; *City of Keller*, 168 S.W.3d at 827. Additionally, when viewing the evidence in a neutral light, we cannot say that the trial court's finding is "against the great weight and preponderance of the evidence as to be manifestly unjust"; as such, we conclude that the evidence is factually sufficient to support the trial court's finding. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Accordingly, we overrule ETC's second issue.

## V. REMOVAL OF THE PIPELINE FROM PAYNE'S LAND

In its third issue, ETC contends that the trial court erred in ordering ETC to remove the pipeline from Payne's land and restore the property to its original condition because such action constitutes "an improper reformation of the Agreement" and because the order constitutes "permanent injunctive relief that is without sufficient pleadings or evidentiary support."

Despite its arguments pertaining to Payne's alleged insufficient pleadings, ETC acknowledges that Payne's live pleading explicitly asked the trial court for a "declaration that the easement has terminated and that the Defendant [ETC] be ordered

to remove the pipeline and to restore Plaintiff's [Payne] property following the removal." However, the Texas Supreme Court has held that:

> [A] declaratory[-]judgment action is not necessarily an action for affirmative relief. The Civil Practice and Remedies Code provides that the Texas Declaratory Judgment Act is "remedial" only. That act serves only to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.[2] The purpose of the [declaratory[-]judgment statute], as evidenced by its own terms, is to declare existing rights, status, or other legal relations. The statute cannot be invoked as an affirmative ground for recovery to revise or alter such rights or legal relations.

*Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164 (Tex. 1993) (internal citations & quotations omitted); *see Dallas County Tax Collector v. Andolina*, 303 S.W.3d 926, 930 (Tex. App.—Dallas 2010, no pet.) ("A declaratory judgment is appropriate to settle and afford relief regarding *existing* rights, status, and other legal relations.") (emphasis added).

Even though Payne included in her live pleading a request to have the pipeline removed from her property, we note that the agreement is silent regarding the possible removal of the pipeline in the event of non-use.[3] We further note that the character of Payne's live pleading is that of a declaratory-judgment action. And as such, we

---

[2] In particular, subsection 37.003(a) of the Texas Declaratory Judgment Act does state that: "A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a) (West 2008).

[3] In response to ETC's contentions, Payne argues, without citing any relevant authority, that pipelines filled with natural gas are inherently dangerous and that she was not required to proffer formal proof of how dangerous the pipeline is because it is a matter of common knowledge. This contention, however, is dubious considering the evidence demonstrated that no gas flowed through the pipeline that is on Payne's property and that a portion of the pipeline on her property had been removed and capped. In fact, there is no evidence in the record demonstrating Payne's right to the affirmative relief requested. *See Gonzalez v. Razi*, 338 S.W.3d 167, 171 (Tex. App.—Houston [1st Dist.] 2011, pet. filed) (citing *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 350 (1955) (holding that a party seeking affirmative relief bears the burden of proof)).

consider her request for the removal of the pipeline, an act not referenced in the agreement, to be an unauthorized request for affirmative relief that alters the rights of the parties. *See Davis*, 856 S.W.2d at 164. Essentially, by requiring ETC to remove the pipeline from her property, Payne sought to include a provision in the agreement that was not originally there. Or, in other words, by granting the request, the trial court ostensibly reformed the agreement to include a provision regarding the removal of the pipeline in the event of non-use, though there is no evidence of a mutual mistake made by the parties; this reformation does not reflect the intent of the parties as expressed in the agreement. *See Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987) ("The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument reflects the *original* agreement of the parties.") (emphasis in original). Therefore, based on the current state of the record, we conclude that the trial court was not authorized to order the removal of the pipeline from Payne's property pursuant to Payne's declaratory-judgment action.[4] Accordingly, we sustain ETC's third issue.

## VI. Conclusion

With regard to the portion of the trial court's judgment ordering the removal of ETC's pipeline from Payne's property, we reverse and render judgment in favor of ETC. We affirm the judgment in all other respects.

---

[4] We do recognize that the decision to grant an equitable remedy is within the discretion of the trial court, *see Nelson v. Najm*, 127 S.W.3d 170, 177 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); however, for the reasons stated above, we do not believe that the trial court was authorized to grant the relief requested.

AL SCOGGINS
Justice


Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Affirmed, in part, reversed and rendered, in part
Opinion delivered and filed August 31, 2011
[CV06]