IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-11-00137-CV

 

ETC Texas Pipline, LTD,

                                                                                    Appellant

 v.

 

Grace Moore Payne,

                                                                                    Appellee

 

 

 



From the 85th District
Court

Brazos County, Texas

Trial Court No. 09-002381-CV-85

 



MEMORANDUM  Opinion



 

In this declaratory-judgment action,
appellant, ETC Texas Pipeline, Ltd. (“ETC”), complains about the trial court’s
judgment in favor of appellee, Grace Moore Payne.  In three issues, ETC argues
that:  (1) the trial court erred in its interpretation of the underlying
agreement, which described the easement at issue in this case; (2) the evidence
supporting the trial court’s interpretation of the agreement is legally and
factually insufficient; and (3) the trial court improperly reformed the
agreement without the appropriate pleadings to require ETC to remove the
pipeline on Moore’s property and to essentially grant a permanent injunction in
Moore’s favor without “the appropriate pleading or evidentiary requirements.” 
We affirm, in part, and reverse and render, in part.

I.      
Background

 

On August 23,
1995, Tom J. Moore Farms, a partnership and predecessor-in-interest to Payne,
conveyed a right-of-way and easement to Ferguson Burleson County Gas Gathering
System (“Ferguson”), the predecessor-in-interest to ETC.  The agreement allowed
Ferguson and subsequently ETC “to construct, maintain, operate, repair, alter,
replace, change the size of and remove pipelines and appurtenant facilities for
the transportation of oil, gas, petroleum products or any other liquids, gases
or substances which can be transported through a pipeline across, under and
upon” Payne’s land.  The agreement also included the following habendum
clause:  “TO HAVE AND HOLD unto GRANTEE [Ferguson and later ETC], its
successors and assigns, so long as the rights and easements herein granted, or
any one of them shall be used by, or useful to, GRANTEE for the purpose herein
granted . . . .”  In addition, the agreement specifically stated that, “[i]n
the event of continuous non-use of said pipeline by grantee, its successors or
assigns, for a period of 18 months, this easement shall be considered to be
abandoned and shall revert to Grantor . . . .”

In 1996, a
four-inch, high-pressure pipeline approximately 1.25 miles long was installed
from the UPRC Glover #1 well (the “Glover well”) to a ten-inch pipeline at
White Switch Road.  A segment of this pipeline runs across Payne’s land.  On or
about November 20, 2002, the pipeline was converted from a high-pressure line
to a low-pressure line.  In doing so, ETC connected the pipeline to a Duke/DCP
pipeline at a point approximately halfway between the Glover well and the tap
at the White Switch Road station.  This connection is not on Payne’s land and
re-routed gas away from the portion of the pipeline situated on Payne’s land. 
In fact, witnesses testified that gas had not traveled through the pipeline on
Payne’s land since the pipeline had been re-routed.  ETC also removed an
above-ground spool piece and capped the pipeline on Payne’s land, which
resulted in a gap in the original pipeline.  ETC alleges that this alteration
is not permanent and can be reinstalled at any time to allow the gas to flow
once again directly from the Glover well to the White Switch Road station.

Believing that
ETC had abandoned the easement, Payne filed a declaratory- judgment action to
determine the rights and responsibilities of the parties under the agreement. 
Payne alleged that the right-of-way and easement agreement had terminated due
to alleged non-use by ETC and, in her first amended petition, requested that,
among other things, the trial court order ETC to remove the pipeline on her
property and restore the property to its original condition.

On January 14,
2011, the trial court conducted a bench trial on this matter.  The trial court
concluded that the agreement had terminated due to non-use and required ETC to
remove the pipeline from Payne’s property within six months and return Payne’s
property to its original condition.  Shortly thereafter, the trial court
entered findings of fact and conclusions of law.  ETC subsequently filed a
motion for new trial, which was overruled by operation of law.  See Tex. R. Civ. P. 329b(c).  This appeal
followed.

II.   
Standard of Review

 

Declaratory
judgments are reviewed under the same standards as all other judgments.  Tex. Civ. Prac. & Rem. Code Ann. §
37.010 (West 2008); see In re Schiwetz, 102 S.W.3d 355, 365 (Tex.
App.—Corpus Christi 2003, no pet.).  We look to the procedure used to resolve
the issue at trial to determine the standard of review on appeal.  Guthery
v. Taylor, 112 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2003, no
pet.); Roberts v. Squyres, 4 S.W.3d 485, 488 (Tex. App.—Beaumont 1999,
pet. denied).  Here, the trial court determined the declaratory-judgment issues
after a bench trial; thus, we apply a sufficiency of the evidence review to the
trial court’s factual findings and review its conclusions of law de novo.  See
Montfort v. Trek Res., Inc., 198 S.W.3d 344, 354 (Tex. App.—Eastland 2006,
no pet.) (citing Black v. City of Killeen, 78 S.W.3d 686, 691 (Tex.
App.—Austin 2002, pet. denied)).

A trial court’s
findings of fact in a bench trial “have the same force and dignity as the
jury’s verdict upon questions.”  Anderson v. City of Seven Points, 806
S.W.2d 791, 794 (Tex. 1991).  Further, “[w]hen the trial court acts as a
fact[-]finder, its findings are reviewed under legal and factual sufficiency
standards.”  In re Doe, 19 S.W.3d 249, 253 (Tex. 2000).

In reviewing for
legal sufficiency of the evidence, we consider the evidence in the light most
favorable to the trial court’s finding.  See AutoZone, Inc. v. Reyes,
272 S.W.3d 588, 592 (Tex. 2008).  The test for legal sufficiency “must always
be whether the evidence at trial would enable [a] reasonable and fair-minded
[fact-finder] to reach the [conclusion] under review.”  City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We must credit favorable evidence
if a reasonable fact-finder could, and disregard contrary evidence unless a
reasonable fact-finder could not.  Id.  The fact-finder is the sole
judge of the credibility of the witnesses and the weight to be assigned to
their testimony.  Id. at 819.

In a factual
sufficiency review, we must consider and weigh all of the evidence in a neutral
light.  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003).  The evidence is factually insufficient only if we conclude “that the
verdict is so against the great weight and preponderance of the evidence as to
be manifestly unjust, regardless of whether the record contains some evidence
of probative force in support of the verdict.”  Id.  Fact findings are
not conclusive when, as in this case, a complete reporter’s record appears in
the record if the contrary is established as a matter of law or if there is no
evidence to support the finding.  Material P’ships, Inc. v. Ventura, 102
S.W.3d 252, 257 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

We review the
trial court’s conclusions of law de novo.  See BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  Conclusions of law are upheld if
the judgment can be sustained on any legal theory the evidence supports.  See
Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex. App.—Austin
1999, pet. denied); see also Fulgham v. Fischer, No. 05-10-00097-CV,
2011 Tex. App. LEXIS 5865, at *6 (Tex. App.—Dallas July 29, 2011, no pet. h.). 
Thus, incorrect conclusions of law do not require reversal if the controlling
findings of fact support the judgment under a correct legal theory.  See
Westech Eng’g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196
(Tex. App.—Austin 1992, no writ); see also Fulgham, 2011 Tex. App. LEXIS
5865, at *6.  Moreover, conclusions of law may not be reversed unless they are
erroneous as a matter of law.  Westech Eng’g, Inc., 835 S.W.2d at 196.

III. The Agreement
and Contract Construction

 

In its first issue, ETC challenges the
trial court’s first three conclusions of law, arguing that the trial court’s
interpretation of the contract is erroneous and fails to adhere to applicable
law regarding contract construction.  In particular, ETC asserts that the
easement remains valid and effective because it is still being used by ETC and
it remains useful to ETC.

A.   
Applicable
Law

 

An easement is
an interest in land and carries with it some right to use, or benefit from, the
land for a specified purpose.  Gollinger v. State, 834 S.W.2d 553,
555-56 (Tex. App.—Houston [14th Dist.] 1992, no writ).  Easement agreements are
interpreted according to the rules of contract construction and
interpretation.  Kothmann v. Rothwell, 280 S.W.3d 877, 880 (Tex.
App.—Amarillo 2009, no pet.) (citing Boland v. Natural Gas Pipeline Co. of
Am., 816 S.W.2d 843 844 (Tex. App.—Fort Worth 1991, no writ)).  In
construing a written agreement, we must ascertain and give effect to the
parties’ intentions as expressed in the agreement.  Frost Nat’l Bank v.
L&F Distribs., Ltd., 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam); Carbona
v. CH Med., Inc., 266 S.W.3d 675, 680 (Tex. App.—Dallas 2008, no pet.).  We
discern intent from the agreement itself and the agreement must be enforced as
written.  Deep Nines, Inc. v. McAfee, Inc., 246 S.W.3d 842, 846 (Tex.
App.—Dallas 2008, no pet.).  We consider the entire writing and attempt to
harmonize and give effect to all the provisions of the contract by analyzing
the provisions with reference to the whole agreement.  Frost Nat’l Bank,
165 S.W.3d at 312.  This consideration comes “’from a utilitarian standpoint
bearing in mind the particular business activity sought to be served,’” and we
will “’avoid when possible and proper a construction which is unreasonable,
inequitable, and oppressive.’”  Id. (quoting Reilly v. Rangers Mgmt.,
Inc., 727 S.W.2d 527, 530 (Tex. 1987)).  Further, “all writings that
pertain to the same transaction will be considered together, even if they were
executed at different times and do not expressly refer to one another.”  DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999).

            Whether an agreement is
ambiguous is a question of law for the court to decide by looking at the
contract as a whole in light of the circumstances existing at the time the
contract was entered.  Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983); Ganske
v. Spence, 129 S.W.3d 701, 707 (Tex. App.—Waco 2004, no pet.).  An
ambiguity does not arise simply because the parties interpret the contract
differently.  Seagull Energy E & P, Inc. v. Eland Energy, 207 S.W.3d
342, 345 (Tex. 2006); Lopez v. Munoz, Hockema & Reed, L.L.P., 22
S.W.3d 857, 861 (Tex. 2000).  A contract is ambiguous when its meaning is
uncertain and doubtful or is reasonably susceptible to more than one
interpretation.  Eland Energy, 207 S.W.3d at 345.  If the agreement can
be given a certain or definite legal meaning or interpretation, it is not
ambiguous, and we will construe it as a matter of law.  Coker, 650
S.W.2d at 393.

            Here, neither the parties
nor the trial court found this agreement to be ambiguous, and we likewise agree
that it is not.  Therefore, we construe the agreement’s meaning as a question
of law.  Id. at 394; see J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003) (holding that the interpretation of an unambiguous
contract is a question of law for the court to decide).  “The intent of the
parties must be taken from the agreement itself, not from the parties’ present
interpretation, and the agreement must be enforced as written.”  Calpine
Producer Servs., L.P. v. Wiser Oil Co., 169 S.W.3d 783, 787 (Tex.
App.—Dallas 2005, no pet.).  A court will not change a contract merely because
the court or one of the parties comes to dislike its provisions or thinks that
something else is needed.  Id.

            “A proper construction of
the terms of a grant, considered in the light of attending circumstances,
determines the purpose or extent of the right of use of an easement.”  Kothmann,
280 S.W.3d at 880; Jones v. Fuller, 856 S.W.2d 597, 603 (Tex. App.—Waco
1993, writ denied); Kearney & Son v. Fancher, 401 S.W.2d 897, 905
(Tex. Civ. App.—Fort Worth 1966, writ ref’d n.r.e.).  In addition, if a term in
a conveyance is not specifically defined, that term is given its plain,
ordinary, and generally accepted meaning.  See Heritage Res., Inc. v.
NationsBank, 939 S.W.2d 118, 121 (Tex. 1996).

B.    
Discussion

 

In
its first three conclusions of law, the trial court found:

 

(1)  
“The easement in
question expressly states and the facts and circumstances substantiates [sic]
that the only purpose and the only rights granted by the easement was—‘to
construct—pipelines—for the transportation of oil, gas—across—the lands of
Grantor [Payne].’”

 

(2)  
“The easement in
question expressly states that the Grantee [ETC] was to have and to hold said
easement ‘so long as—‘ the easement was—‘used by or useful to, Grantee for the purpose
herein granted—.‘“

 

(3)  
“The easement has
terminated because the easement in question has not been used for the purpose
it was granted for, i.e. transportation of oil, gas—across—the lands of Grantor
since November, 2002.”

 

(Emphasis in
original).

 

1.     
The Trial Court’s
First Conclusion of Law

 

            With respect to the trial
court’s first conclusion of law, ETC argues that the trial court’s
interpretation constrained it to only constructing pipelines on Payne’s land
rather than maintaining, operating, repairing, altering, replacing, changing
the size of, and removing pipelines, as the agreement states.  ETC also asserts
that, unlike the trial court’s interpretation, the purposes under the agreement
“are not limited to transportation of materials across, under and upon the
lands of the grantor.”  ETC further contends that the trial court’s
interpretation of the agreement improperly imposed a limitation which excluded
“most solid materials such as coal, lignite, or similar minerals and making the
easement subject to liquid and gaseous substances.”

            When considering the
attending circumstances, as we must do, we find that the purpose for obtaining
the easement was to facilitate the construction of a pipeline from the Glover
well to the White Switch Road station for the transportation of gas along the
pipeline.  See Kothmann, 280 S.W.3d at 880; Jones, 856
S.W.2d at 603; Fancher, 401 S.W.2d at 905.  The pipeline that was
constructed ran across Payne’s land and transported gas, which demonstrates
ETC’s need for the easement agreement.[1] 
This is especially true given the fact that Exhibit A, which was incorporated
as part of the agreement, repeatedly references the specifics of constructing a
pipeline on Payne’s land.  See Parks, 1 S.W.3d at 102. 
Essentially, our reading of the agreement yields a finding that the parties’
intent behind the agreement was for the right to construct a pipeline along a
portion of Payne’s land for the transportation of gas.  See Frost
Nat’l Bank, 165 S.W.3d at 311-12; Carbona, 266 S.W.3d at 680; Deep
Nines, Inc., 246 S.W.3d at 846.  Therefore, we disagree with ETC’s
assertions that the trial court’s first conclusion of law is erroneous and
somehow altered the meaning of the agreement.  See Stable Energy, L.P.,
999 S.W.2d at 547; see also Fulgham, 2011 Tex. App. LEXIS 5865, at *6.

1.     
The Trial
Court’s Second and Third Conclusions of Law

 

ETC’s complaints
about the trial court’s second and third conclusions of law are substantially
similar to the arguments made in its second issue on appeal and center on the
habendum clause and whether the easement was in use.  According to ETC, the
language in the habendum clause, which states that the agreement remains
effective “so long as the rights and easements herein granted, or any one of
them shall be used by, or useful to GRANTEE for the purpose herein granted,”
undermines the trial court’s conclusion that the easement terminated. 
Specifically, ETC notes that the “evidence conclusively establishes that ETC
has continuously used its right to maintain the Pipeline by cathodically
protecting and pressurizing the Pipeline to ensure that it remain effective to
transport the natural gas contained within.”  In making these contentions, ETC
relies heavily on the decision in Stephenson v. Vastar Resources, Inc.,
89 S.W.3d 790 (Tex. App.—Corpus Christi 2002, pet. denied).

In Stephenson,
a pipeline operator deactivated and purged gas from a 16.5-mile section of a
pipeline that was subject to a two-year non-use termination clause.  Id.
at 793.  Though gas was purged from the pipeline and the pipeline was
deactivated, the operator continued to use the pipeline by “maintaining, use of
cathodic protection, inspection (by walking and aerial), mowing, cutting and
keeping up the pipeline and right-of-way.”  Id.  The Stephenson
court agreed that the actions taken by the operator constituted “use” of the
pipeline, and thus, the two-year non-use termination clause was not
applicable.  Id. at 794.

Here, Charles
Moody, formerly a construction foreman for ETC, testified that he is familiar
with the pipeline running from the Glover well to the White Switch Road
station.  Moody noted that the Duke/DCP pipeline was not constructed on Payne’s
property and that the pipeline intersected with the main pipeline.  In 2002,
when the Duke/DCP pipeline was connected to the main pipeline, a section of the
main pipeline that is on Payne’s property was removed.  The remaining pipeline
was capped so that no materials would continue to flow towards the White Switch
Road station.  Moody denied cathodically protecting the portion of the pipeline
on Payne’s property, but he alleged that Bennie Lloyd, the operations foreman
for ETC, told him that the whole pipeline had been cathodically protected. 
Moody stated that the pipeline had been pressure-tested and maintained, though
he later admitted that he did not have first-hand knowledge of the tests or
maintenance.  Moody also stated that Jim McFarland, a contract administrator
for ETC, told him that the company planned to reconnect the portion of the main
pipeline on Payne’s land.  When pressed for details about the possible
reconnection, Moody was unable to recall the entire conversation he had with
McFarland.  Later, Moody admitted that it was impossible for gas to flow
through the pipeline from the Glover well to the White Switch Road station
because of the removed portion of the pipeline.

Lloyd also
testified, and when asked about the process of cathodically protecting the main
gas pipeline, Lloyd admitted that he did not have anything to do with it and
that such protection would be the responsibility of another department.  Lloyd
had no knowledge of the pipeline ever being cathodically protected.  Lloyd
acknowledged that ETC had not pressure-tested the portion of the pipeline on
Payne’s land since 2002 and that he did not have any knowledge of maintenance
being performed on that segment of the pipeline since the pipeline had been
capped.  Lloyd also admitted that ETC records showed that no gas had flowed
through the pipeline on Payne’s property since November 2002, and that no ETC
employees had “stepped foot” on Payne’s property after November 2002.

Considering the
attending circumstances pertaining to the easement, we note that ETC has not
proffered any evidence to show that the portion of the pipeline on Payne’s
property had been maintained, cathodically protected, or inspected since it had
been deactivated in November 2002.  It does not appear as if the pipeline had
been used by ETC since November 2002.  In fact, Lloyd admitted that no ETC
employees had even “stepped foot” on Payne’s property to service the pipeline
since November 2002.  Given the absence of evidence demonstrating ETC’s
continuous usage of the pipeline, we find that the Stephenson decision
is inapplicable in this case.  Furthermore, it is important to note that the
easement in Stephenson did not define “use,” whereas the habendum clause
in this case limits ETC’s “use” of the easement “for the purpose herein
granted,” which, as we described above, was for the construction of a pipeline
for the transportation of gas.

Moreover, while
we recognize that “[e]very easement carries with it the right to do whatever is
reasonably necessary for full enjoyment of the rights granted,” ETC’s
interpretation of the habendum clause to mean that the easement is still in
effect because it may still be useful to ETC does not comport with the terms of
the agreement.  Whaley v. Cent. Church of Christ, 227 S.W.3d 228, 231
(Tex. App.—Houston [1st Dist.] 2007, no pet.).  If we were to adopt ETC’s
interpretation of the agreement, the term of the agreement likely would be
perpetual and we would ostensibly eviscerate the eighteen-month non-use
termination clause.  See Hubert v. Davis, 170 S.W.3d 706, 712 (Tex.
App.—Tyler 2005, no pet.) (“Yet, while not revocable at will, easements do not
necessarily run in perpetuity.  A determinable easement may be created that
will terminate on the happening of a particular event.”) (citing Sentell v.
Williamson County, 801 S.W.2d 220, 222 (Tex. App.—Austin 1990, no writ)); see
also Coleman v. Forister, 514 S.W.2d 899, 903 (Tex. 1974) (“Without
pleadings and evidence of surrounding circumstances, [grantees] are entitled to
the rights granted by the instrument, and no more.”).  When construing a
written agreement, we are to harmonize all of the provisions of the agreement
so as to not render any provision meaningless.  See Frost Nat’l Bank,
165 S.W.3d at 312.  Because ETC’s interpretation would render the
eighteen-month non-use termination clause meaningless, we cannot adopt ETC’s
interpretation.  See id.  Based on the foregoing, we cannot say that the
trial court’s second and third conclusions of law are erroneous.  See Stable
Energy, L.P., 999 S.W.2d at 547; see also Fulgham, 2011 Tex. App.
LEXIS 5865, at *6.  We overrule ETC’s first issue.

IV. The Sufficiency
of the Evidence

Supporting the Trial Court’s Findings of Fact

 

In its second
issue, ETC argues that the evidence demonstrates that the easement has been
used continuously for the purpose for which it was granted; thus, the trial
court’s twelfth finding of fact is not supported by legally and factually
sufficient evidence.  ETC further argues that:  (1) it regularly maintains,
pressurizes, cathodically protects the pipeline, and at least partially uses
the pipeline to transport gas; and (2) the possibility of reconnecting the
pipeline demonstrates that the pipeline is still useful to ETC.

In its twelfth finding
of fact, the trial court specifically noted that:  “The pipeline in question
has not been used to transport gas across Plaintiff’s property since November,
2002 or five (5) times the eighteen (18) months [sic] period stated by
Paragraph 11 to be considered abandonment.”  As noted earlier, ETC’s second
appellate issue is similar in substance to the arguments made with respect to
the trial court’s second and third conclusions of law.  We have already
detailed the testimony of Moody and Lloyd and found no evidence that ETC “used”
the portion of the pipeline existing on Payne’s property since November 2002, a
term exceeding the eighteen months required for the abandonment provision to
apply.  Furthermore, with respect to ETC’s argument that the pipeline still
could be used because of the possibility of reconnection, we note that Moody
could not recall any details from a six-month-old conversation with McFarland
as to when the pipeline will be re-connected to transport gas to the White
Switch Road station and that adopting such an interpretation of the agreement
likely would lead to a perpetual easement in favor of ETC.  Viewing the
evidence in the light most favorable to the trial court’s finding, we conclude
that a reasonable fact-finder could have concluded that the easement had
terminated pursuant to paragraph 11 of the agreement; thus, we hold that the
evidence is legally sufficient to support the trial court’s finding.  See Reyes,
272 S.W.3d at 592; City of Keller, 168 S.W.3d at 827.  Additionally,
when viewing the evidence in a neutral light, we cannot say that the trial
court’s finding is “against the great weight and preponderance of the evidence
as to be manifestly unjust”; as such, we conclude that the evidence is
factually sufficient to support the trial court’s finding.  See Golden
Eagle Archery, Inc., 116 S.W.3d at 761.  Accordingly, we overrule ETC’s
second issue.

V.   
Removal of the Pipeline from Payne’s Land

 

In its third
issue, ETC contends that the trial court erred in ordering ETC to remove the pipeline
from Payne’s land and restore the property to its original condition because
such action constitutes “an improper reformation of the Agreement” and because
the order constitutes “permanent injunctive relief that is without sufficient
pleadings or evidentiary support.”

Despite its
arguments pertaining to Payne’s alleged insufficient pleadings, ETC
acknowledges that Payne’s live pleading explicitly asked the trial court for a
“declaration that the easement has terminated and that the Defendant [ETC] be
ordered to remove the pipeline and to restore Plaintiff’s [Payne] property
following the removal.”  However, the Texas Supreme Court has held that:

[A] declaratory[-]judgment action is not
necessarily an action for affirmative relief.  The Civil Practice and Remedies
Code provides that the Texas Declaratory Judgment Act is “remedial” only.  That
act serves only to settle and to afford relief from uncertainty and insecurity
with respect to rights, status, and other legal relations.[[2]] 
The purpose of the [declaratory[-]judgment statute], as evidenced by its own
terms, is to declare existing rights, status, or other legal relations.  The
statute cannot be invoked as an affirmative ground for recovery to revise or
alter such rights or legal relations.

 

Republic Ins. Co. v. Davis, 856 S.W.2d 158, 164 (Tex. 1993)
(internal citations & quotations omitted); see Dallas County Tax
Collector v. Andolina, 303 S.W.3d 926, 930 (Tex. App.—Dallas 2010, no pet.)
(“A declaratory judgment is appropriate to settle and afford relief regarding existing
rights, status, and other legal relations.”) (emphasis added).

            Even though Payne included
in her live pleading a request to have the pipeline removed from her property,
we note that the agreement is silent regarding the possible removal of the
pipeline in the event of non-use.[3] 
We further note that the character of Payne’s live pleading is that of a
declaratory-judgment action.  And as such, we consider her request for the
removal of the pipeline, an act not referenced in the agreement, to be an
unauthorized request for affirmative relief that alters the rights of the
parties.  See Davis, 856 S.W.2d at 164.  Essentially, by
requiring ETC to remove the pipeline from her property, Payne sought to include
a provision in the agreement that was not originally there.  Or, in other
words, by granting the request, the trial court ostensibly reformed the
agreement to include a provision regarding the removal of the pipeline in the
event of non-use, though there is no evidence of a mutual mistake made by the
parties; this reformation does not reflect the intent of the parties as
expressed in the agreement.  See Cherokee Water Co. v. Forderhause, 741
S.W.2d 377, 379 (Tex. 1987) (“The underlying objective of reformation is to
correct a mutual mistake made in preparing a written instrument, so that
the instrument reflects the original agreement of the parties.”)
(emphasis in original).  Therefore, based on the current state of the record,
we conclude that the trial court was not authorized to order the removal of the
pipeline from Payne’s property pursuant to Payne’s declaratory-judgment action.[4] 
Accordingly, we sustain ETC’s third issue.

VI. Conclusion

 

With regard to the portion of the trial
court’s judgment ordering the removal of ETC’s pipeline from Payne’s property,
we reverse and render judgment in favor of ETC.  We affirm the judgment in all
other respects.

 

 

 

 

 

AL SCOGGINS

                                                                                    Justice

 

 

Before Chief
Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed, in
part, reversed and rendered, in part

Opinion
delivered and filed August 31, 2011

[CV06]

 








 









[1] The record contains no evidence that
the pipeline was used to transport anything other than natural gas.





[2] In particular, subsection 37.003(a) of
the Texas Declaratory Judgment Act does state that:  “A court of record within
its jurisdiction has power to declare rights, status, and other legal relations
whether or not further relief is or could be claimed.”  Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (West 2008).

 





[3] In response to ETC’s contentions, Payne
argues, without citing any relevant authority, that pipelines filled with
natural gas are inherently dangerous and that she was not required to proffer
formal proof of how dangerous the pipeline is because it is a matter of common
knowledge.  This contention, however, is dubious considering the evidence
demonstrated that no gas flowed through the pipeline that is on Payne’s
property and that a portion of the pipeline on her property had been removed
and capped.  In fact, there is no evidence in the record demonstrating Payne’s
right to the affirmative relief requested.  See Gonzalez v. Razi, 338
S.W.3d 167, 171 (Tex. App.—Houston [1st Dist.] 2011, pet. filed) (citing Pace
Corp. v. Jackson, 155 Tex. 179, 284 S.W.2d 340, 350 (1955) (holding that a
party seeking affirmative relief bears the burden of proof)).

  





[4] We do recognize that the decision to
grant an equitable remedy is within the discretion of the trial court, see
Nelson v. Najm, 127 S.W.3d 170, 177 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied); however, for the reasons stated above, we do not believe that the
trial court was authorized to grant the relief requested.