**DALLAS COUNTY TAX COLLECTOR and City of Coppell Tax Collector, Appellants,**

**v.**

**Charles and Margaret ANDOLINA, Appellees.**

**No. 05–08–01086–CV.**

Court of Appeals of Texas, Dallas.

Jan. 26, 2010.

Edward Lopez, Jr., Linebarger, Goggan, Blair and Sampson, L.L.P., Dallas, TX, for Appellants.

John M. Ledyard, Randal Lynn Telford, Irving, TX, for Appellees.

Before Justices MORRIS, BRIDGES, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

The Dallas County Tax Collector and City of Coppell Tax Collector (collectively, the Taxing Authorities) appeal a summary judgment granted in favor of Charles and Margaret Andolina, in their declaratory judgment action to establish whether the Andolinas are entitled to direct the payment of certain ad valorem taxes owed the Taxing Authorities. In three issues, the Taxing Authorities contend the trial court erred in granting the Andolinas' motion for summary judgment. We reverse the trial court's judgment and remand this case for further proceedings.

## BACKGROUND

The Taxing Authorities held tax liens against the real and personal property of Horizon Landscape, LLP, a plant nursery and landscape company. In June 2004, Horizon filed for Chapter 11 bankruptcy protection and emerged under a confirmed reorganization plan the following year. The plan of reorganization designated the Taxing Authorities' liens as "Allowed Priority Creditor Claims" and provided:

The Priority Tax Credit Claims of [the Taxing Authorities] are for real estate taxes and business personal property ad valorem taxes. The Debtor believes the total amount to be approximately

$70,000.... The Tax Claim[1] of [the Taxing Authorities] will be allowed post-petition pre confirmation statutory interest at the rate of 12% per annum and post confirmation interest at the rate of 6% per annum[, the Taxing Authorities] shall retain [their] liens until paid in full.

As part of the confirmed plan, the bankruptcy court also approved the sale of Horizon's real and personal property to the Andolinas; Charles Andolina was a part owner of Horizon. The Andolinas bought the real and personal property of Horizon subject to the liens of the Taxing Authorities and other creditors. According to the bankruptcy court's Order Confirming the Second Amended Plan of Reorganization, the real and personal property purchased by the Andolinas would not transfer "unless and until the Debtor has sufficient funds to pay off the secured claims of [certain promissory note holders] and ad valorem taxes, in full in accordance with ... the Plan...."

In May 2005, the Andolinas closed on the real property purchased from Horizon. At closing, their agent, Chicago Title Insurance Company, collected $60,736.32 in taxes owed the Taxing Authorities. That amount, discovered through a title search, reflected the taxes owed on the real property only; Chicago Title did not account for or collect the remainder of the taxes owed under the confirmed plan. Shortly after closing, Chicago Title forwarded payment to the Taxing Authorities, explaining in a cover letter that the payment represented the taxes owed for the "following described property." The description that followed was a legal description for the real property. The Andolinas did not tender any amount to cover the personal property taxes owed the Taxing Authorities.[2] Upon receipt of the payment, the Taxing Authorities applied the money to the tax liens owed on the personal property and the remainder to the tax liens owed on the real property. Because the amount tendered was less than the total amount of the Tax Claims provided in the confirmed reorganization plan, the liens on the property remained. The Andolinas filed suit.

In their state court suit, the Andolinas sought "a declaration of the invalidity of certain documents and claims made by the [Taxing Authorities], in order to quiet title to Real Property in which the [Andolinas] claim[ ] an interest...." The Andolinas alleged the checks they sent the Taxing Authorities were meant to pay off the taxes assessed against the real property and asserted under Texas Tax Code section 31.07, they are permitted "to direct which taxes are to be paid."[3] They alleged that by applying the amounts to the personal property first, rather than to the real property as requested, the Taxing Authorities created a shortfall in the taxes owed against the real property. The Andolinas asked the trial court for a declaration that (1) they are entitled to designate which taxes are to be paid; (2) the Taxing Authorities failed to apply the taxes correctly;

1. The plan defined "Tax Claim" as "any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan."

2. In fact, the Andolinas conceded that "[t]he taxes owing on the personal property were neither collected by Chicago Title nor subsequently paid by [them]."

3. Texas Tax Code section 31.07(a) provides: "A person may pay the tax imposed on any one property without simultaneously paying taxes imposed on other property he owns." TEX. TAX CODE ANN. § 31.07(a) (Vernon 2008).

and (3) they are entitled to have the proper amount credited and applied to the taxes owed on the real property. Thereafter, the Andolinas moved for summary judgment.

In response to the Andolinas' motion, the Taxing Authorities argued the Andolinas' suit was precluded because this issue was determined by the bankruptcy court as part of the proceedings that led to the sale of Horizon and the confirmed plan of reorganization. According to the Taxing Authorities, the confirmed plan established that they "retained their respective liens until paid in full." The Taxing Authorities therefore maintained the Andolinas' request to direct payment of the taxes owed would have the effect of extinguishing the liens on one or more classes of their claims in contradiction of the bankruptcy court's confirmation order. Because these matters were before the bankruptcy court and within the parameters of its confirmation order, the Taxing Authorities argued the trial court had no jurisdiction to grant the relief requested.

Without specifying the grounds upon which it based its ruling, the trial court granted the Andolinas' motion for summary judgment and ordered the Taxing Authorities to re-apply the amounts to the taxes associated with the real property. The trial court also ordered the Taxing Authorities to forfeit any penalties or interest assessed against the real property. The Taxing Authorities appealed.

## DISCUSSION

### Standard of Review

The standards for reviewing a traditional motion for summary judgment are well established. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994);

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex. App.-Dallas 2000, pet. denied). Under Texas Rule of Civil Procedure 166a(c), the movant bears the burden of showing that no genuine issue of material facts exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003).

Our review in this case is limited to those issues addressing whether the trial court properly rendered summary judgment on the Andolinas' claim for declaratory relief based on the record before it. The Taxing Authorities did not file their own summary judgment motion. Rather, they filed a response to the Andolinas' motion, arguing the trial court had no jurisdiction over the case because the Andolinas were attempting to alter matters determined by the bankruptcy court. We begin with that issue.

### Collateral Attack

■ In their first issue, the Taxing Authorities contend the trial court erred in rendering summary judgment in favor of the Andolinas because their action for declaratory relief constituted an impermissible collateral attack on the bankruptcy court's order confirming Horizon's plan of reorganization. The Taxing Authorities maintain the Andolinas' request to declare a distinction in the tax liens and direct their payment to the taxes owed on the real property disregards the confirmation order and acts as a request to extinguish the lien on the real property. They assert the real property liens were combined with

the personal property liens and allowed as a joint amount in the confirmed plan; under the plan, such liens could not be released until the Andolinas paid the amount in full. The Taxing Authorities argue the trial court allowed the Andolinas to "rewrite" the bankruptcy court's order in a manner which diminished their rights. They contend these issues could or should have been raised in the bankruptcy court and are thus not subject to collateral attack.

■■■ A declaratory judgment is appropriate to settle and afford relief regarding existing rights, status, and other legal relations. TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 2008); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 466 (Tex. 1995). A declaratory judgment action, however, may not be used to collaterally attack, modify, or interpret a prior judgment. *Martin v. Dosohs I, Ltd.*, 2 S.W.3d 350, 353–54 (Tex.App.-San Antonio 1999, pet. denied); *Cohen v. Cohen*, 632 S.W.2d 172, 173 (Tex.App.-Waco 1982, no writ). A collateral attack is an attempt to avoid the effect of a judgment "in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex.2005). Because the policy of the law gives finality to the judgment of the courts, collateral attacks on final judgments are generally disallowed. *Id.* at 345 (citing *Tice v. City of Pasadena*, 767 S.W.2d 700, 703 (Tex.1989)).[4] Only void judgments may be collaterally attacked. *Prostok*, 165 S.W.3d at 346 (citing *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985)). A judgment is void when it is apparent the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court." *Placke*, 698 S.W.2d at 363; *see also Sigmar v. Anderson*, 212 S.W.3d 789, 793 (Tex.App.-Austin 2006, no pet.). The Andolinas do not contend the bankruptcy court's order confirming Horizon's plan of reorganization was void. Therefore, any collateral attack on the bankruptcy court's confirmation order must fail. *Prostok*, 165 S.W.3d at 346; *Sigmar*, 212 S.W.3d at 793.

The primary purpose of the Andolinas' request for declaratory relief was to quiet title to the real property purchased from Horizon by having their payment for a portion of the taxes owed the Taxing Authorities applied to the real property. The Andolinas admit the bankruptcy court's order "contemplates that the taxes are to be paid on both the real and personal property" and that under a broad reading, the tax liens are combined. They contend, however, that the confirmation order can be read as separating the liens on the real property from those placed on the personal property and assert their declaratory judgment action does not require the trial court to construe the provisions dealing with the tax claims in any manner. As support, the Andolinas rely on provisions in the Texas Tax Code, which distinguish between real and personal property. *See, e.g.,* TEX. TAX CODE ANN. §§ 1.04 (defining

4. In *Browning v. Prostok,* the Texas Supreme Court noted that the policy of finality "is especially important in a Chapter 11 bankruptcy, where the proceedings are intended to rehabilitate a business.... If the rehabilitative purpose of Chapter 11 is to be realized, Chapter 11 proceedings must be 'concluded with reasonable expedition and finality so as to allow certainty for future business planning.'" *Prostok*, 165 S.W.3d. at 346 (quoting *In re Newport Harbor Assocs.*, 589 F.2d 20, 22 (1st Cir.1978)).

and distinguishing real property from personal property), 11.01 (providing State tax assessments against real and personal property), 32.01 (providing taxing entity may impose lien on property to secure payment of tax) (Vernon 2008). The Andolinas posit that because the tax code does not give the Taxing Authorities the right to impose a lien on real property to secure the payment of personal property taxes, their suit for a declaration that they may direct payment of the taxes owed the Taxing Authorities under section 31.07 does not contravene the bankruptcy court's confirmation order. We disagree.

A plain reading of the confirmation order and reorganization plan contradicts the Andolinas' theory. The bankruptcy court's order approving the sale of Horizon to the Andolinas states "there shall be no transfer of the Real Property or Personal Property" until the tax liens are paid in full. Horizon's confirmed plan of reorganization further describes the treatment of the Taxing Authorities' class of claims and provides the Taxing Authorities "shall retain [their] liens until paid in full." The Taxing Authorities' allowed "Tax Claims" are "for taxes owed on the property" of Horizon and purchased by the Andolinas. These provisions do not allow the Taxing Authorities to impose a lien on real property to secure the personal property taxes. Rather, under the plan, the lien imposed on the real property is combined with the lien imposed on the personal property to create a "total amount" owed for the real and personal property tax claims; the total amount of the tax claims was approximately $70,000. Thus, the language used in the bankruptcy court's order and confirmed plan shows the Taxing Authorities' claims were allowed for approximately $70,000 and that the liens on either property would be protected until the Tax Claims were paid in full.

The Andolinas maintain they are not seeking to avoid the tax liens or disturb the confirmation order. They assert their declaratory judgment action "merely ask[s] the trial court to grant them the relief they were afforded under Texas Tax Code § 31.07 as owners and taxpayers of the subject real and personal property." The Andolinas' action, however, necessarily calls into question certain legal implications of the confirmed reorganization plan, specifically, the terms of the sale of Horizon and the treatment afforded the Taxing Authorities' claims. *Prostok,* 165 S.W.3d at 346–47. The effect of a declaration in the Andolinas' favor ignores the language in the confirmed plan requiring the taxes on both the real and personal property to be paid in full before title on either property transferred to the Andolinas and extinguishes the Taxing Authorities' lien on the real property, diminishing their rights under the confirmed plan. This is an impermissible collateral attack. *Id.* at 348–49; *In re French Gardens, Ltd.,* 58 B.R. 959, 963 (Bankr.S.D.Tex.1986) ("Though an action may have an independent purpose and may contemplate some other relief, it is a collateral attack if it must in effect overrule a previous judgment."). The Andolinas may not now invoke the tax code and seek a declaration which would require the trial court to interpret the bankruptcy court's treatment and result in a modification of the Taxing Authorities' claims under the confirmed plan. *See Martin,* 2 S.W.3d at 353–54; *Cohen,* 632 S.W.2d at 173; *see also Speaker v. Lawler,* 463 S.W.2d 741, 742–43 (Tex.Civ.App.-Beaumont 1971, writ ref'd n.r.e.) (holding litigant cannot use Uniform Declaratory Judgment Act for purpose of asking trial court to interpret prior judgment of another court).

As purchasers of Horizon's property and Charles Andolina's part ownership of Hori-

**932**

zon, the Andolinas participated in the bankruptcy proceedings and were aware of the provisions dealing with the Taxing Authorities' claims. The amount owed the Taxing Authorities and the liens placed on the real and personal property were certainly at issue in the bankruptcy proceedings; the confirmed plan even contemplated how these claims would be paid—"out of the revenue from the continued operations of the business" by the Andolinas. Consequently, any theory concerning the application of tax code section 31.07 to the Tax Claims should have been raised in the bankruptcy proceedings prior to confirmation. *Prostok,* 165 S.W.3d at 348–49; *Sigmar,* 212 S.W.3d at 795 (discussing *Prostok* and stating "issues that either were or should have been litigated in a prior judicial proceeding, including a bankruptcy proceeding, cannot be relitigated in a subsequent proceeding that would have the effect of avoiding the prior court order or judgment"); *Henderson v. Chambers,* 208 S.W.3d 546, 553 (Tex.App.-Austin 2006, no pet.) (holding claims of fraudulent conduct at issue in current suit were intrinsic to prior divorce action and barred as impermissible collateral attack).

Because their declaratory judgment action constitutes a collateral attack on the bankruptcy court's order confirming Horizon's plan of reorganization, the Andolinas did not establish they were entitled to judgment as a matter of law. Accordingly, the trial court erred in granting their motion for summary judgment. *See* Tex.R. Civ. P. 166a(c). We sustain the Taxing Authorities' first issue.

**CONCLUSION**

We conclude the Andolinas' suit for declaratory relief constitutes an impermissible collateral attack on the bankruptcy court's confirmation order. Having resolved the first issue in the Taxing Authorities' favor, we do not reach the Taxing Authorities' remaining issues. We reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.