**Affirmed; Opinion Filed July 3, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00433-CV

### ASYMBLIX LLC D/B/A IPHOTONIX, Appellant
### V.
### RICHARDSON INDEPENDENT SCHOOL DISTRICT, CITY OF RICHARDSON, AND DALLAS COUNTY, Appellees

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. TX-12-40481**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Lang

Appellee Richardson Independent School District ("RISD") filed this lawsuit against appellant Asymblix LLC d/b/a IPhotonix ("Asymblix") to collect delinquent ad valorem taxes allegedly owed by Asymblix on business personal property. Further, the City of Richardson and Dallas County (the "intervenors") intervened to collect taxes they contended Asymblix owed to them on the same property. Following a bench trial, the trial court (1) rendered judgment in favor of RISD and the intervenors (collectively, "appellees") and (2) denied Asymblix's motion for new trial.

On appeal, Asymblix asserts in two issues (1) the evidence is legally and factually insufficient to support the trial court's judgment and (2) the trial court abused its discretion by

denying Asymblix's motion for new trial. We decide against Asymblix on its two issues. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL CONTEXT

In June 2009, TXP Corporation a/k/a/ Texas Prototypes, Inc. ("TXP Corporation") commenced a Chapter 11 bankruptcy proceeding in federal bankruptcy court. *See generally* 11 U.S.C. §§ 1101–1146. At the time of that bankruptcy filing, appellees were owed ad valorem taxes accrued against certain business personal property of TXP Corporation (the "property") for the years 2008 and 2009. The bankruptcy court signed a March 23, 2010 "final order" (the "Sale Order") in which it authorized the sale of the property to an entity that subsequently became Asymblix.[1] The sale closed on approximately March 30, 2010. Several weeks later, upon motion

---

[1] In the Sale Order, the bankruptcy court stated in part,

THE COURT HEREBY FINDS AND DETERMINES THAT:

. . . .

S. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: . . . (v) the taxing authorities for the City of Richardson and Dallas County (collectively, the "Taxing Authorities"); [and] (vi) the taxing authority for Richardson Independent School District ("RISD") . . . .

T. This Order resolves the objection asserted by the Taxing Authorities.

. . . .

V. The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets and will vest the Purchaser with all right, title and interest to the Assets free and clear of any "claim", "lien", or "security interest" as those terms are defined in the Bankruptcy Code (collectively the "Interests"), except for ad valorem property tax liens held by RISD (to the extent such liens attach to the Assets) or as otherwise set forth in this Order.

W. The Debtor may sell the Assets free and clear of Interests in accordance with section 363(f) of the Bankruptcy Code because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object to the Sale or who have withdrawn their objection to the Sale Motion based on agreements herein are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests, who did object fall within one or more of the other subsections of section 363(f)(1) or (3)–(5) of the Bankruptcy Code and are adequately protected.

. . . .

Y. The Purchaser would not have entered into the Sale Documents and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and creditors, if the Court did not enter an order determining that the sale of the Assets to Purchaser was free and clear of all Interests (except Interests held by RISD, to the extent such Interests attach to the Assets).

. . . .

NOW THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:

. . . .

8. Upon the Closing, the Purchaser shall pay the amounts assessed by the Taxing Authorities for the Debtor's 2008 and 2009 ad valorem business personal property taxes with interest at the state statutory rate of 1% per month pursuant to sections 506(b) and 511 of the Bankruptcy Code. The Purchaser and the Taxing Authorities will cooperate to determine the values and allocations of 2010 ad valorem business personal property taxes which the Purchaser shall pay at a date to be agreed upon between the Purchaser and the Taxing Authorities. Any and all valid liens, claims and encumbrances asserted by the Taxing Authorities with respect to the Assets not paid at Closing shall remain on the Assets with the same priority, validity and extent as existed at the time of the Sale, as permitted under applicable law.

. . . .

13. This Order shall be binding in all respects upon . . . all successors and assigns of the Purchaser . . . .

14. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be assigned and transferred to the Purchaser or its designee and upon the Closing shall be free and clear of all Interests of any kind or nature whatsoever . . .

by TXP Corporation, the bankruptcy court signed an order dismissing the Chapter 11 bankruptcy proceeding.

On August 8, 2012, RISD filed this lawsuit against Asymblix. In its petition, RISD sought delinquent ad valorem taxes on the property for 2008, 2009, and 2010, plus penalties, interest, attorney's fees, and costs. The petition stated in part "[s]aid Defendant(s) currently own(s) or claims(s) an interest in the property hereinafter described and/or owned the hereinafter described property on the first day of January of each of the years for which taxes are due and owing." Additionally, the petition stated in part (1) RISD was seeking "personal liability" and "foreclosure of the tax lien" on the property against "the party or parties who owned the property, described above, on January 1 of the years indicated," and (2) "[a]s to all other Defendants, Plaintiffs' action is a proceeding in rem only, whereby Plaintiff(s) seek(s) to foreclose the tax lien(s) on each separately described property listed in satisfaction of the taxes, penalties, interest and all costs due or to become due." The intervenors' petition was filed in October 2012 and was substantially similar to that of RISD.

Asymblix filed a general denial answer and asserted several affirmative defenses, including (1) the "claims and/or liens" of RISD and the intervenors "were discharged in bankruptcy" and (2) "Defendant was not formed and not in existence until 2010 and would not be liable for taxes

---

except as otherwise set forth in this Order (including Interests held by RISD to the extent such interests are affixed to Assets), effective upon receipt of good, complete and sufficient funds or consideration by Debtor for such Assets.

15. Except as otherwise provided in this Order, all persons and entities, including, but not limited to, all . . . governmental, tax, and regulatory authorities, . . . holding Interests of any kind or nature whatsoever against or in the Debtor or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), existing prior to Closing arising under or out of, in connection with, or in any way relating to, the Debtor, the Assets, or the Sale, are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Assets, such persons' or entities' Interests.
. . . .

17. The transfer of the Assets to the Purchaser pursuant to this Order constitutes a legal, valid, and effective transfer of the Assets and shall vest in the Purchaser or its designee with all right, title, and interest of the Debtor in and to the Assets, free and clear of all Interests of any kind or nature whatsoever, except as provided for herein.
. . . .

36. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order [and] . . . any waivers and consents thereunder, . . . including, but not limited to, retaining jurisdiction to . . . (c) resolve any disputes arising under or related to any sale documents, except as otherwise provided therein, and (d) interpret, implement, and enforce the provisions of this Order.

before it existed." Further, Asymblix filed in the bankruptcy court a "Motion to Re-Open Bankruptcy Proceeding for Limited Purpose of Determining Tax Claims." In that motion, Asymblix asserted it was the "successor in interest" to the debtor in the bankruptcy proceeding described above and sought "the intervention of the Bankruptcy Court to determine if and to what extent any tax liens survived the sale of the Debtor's assets under the Sale Order." The bankruptcy court signed a July 30, 2013 order in which it denied that motion "for the reasons stated in the Letter Ruling entered in this case on July 22, 2013" (the "letter ruling").[2]

Trial in this case commenced August 8, 2013. RISD presented several documents that were admitted into evidence without objection, including (1) the letter ruling and (2) a "Certification of Tax Records," which included an RISD "Tax Statement" respecting the property that bore the heading "TEXAS PROTOTYPES, 1299 COMMERCE DR., RICHARDSON, TX 75081-2406" and showed an itemization of the amount of taxes and "P and I" due to RISD for each of the three years in question and a total amount due of $215,264.40. Further, documents introduced by the intervenors and admitted into evidence without objection included (1) the Sale Order and (2) a certified tax record of Dallas County that stated "Certified Owner: ASYMBLIX LLC" and showed

---

[2] In the letter ruling, the bankruptcy court stated in part,

> By the Motion, Asymblix asks me to conclude that Asymblix holds the assets of the debtor ("TXP") free of the claims for pre-petition taxes of Richardson Independent School District, Dallas County and the City of Richardson (collectively, the "Taxing Authorities"). Asymblix bases its argument on [the Sale Order]. . . .
>     The [Sale Order] provides in Paragraph 8 that liens of the Taxing Authorities will remain attached to the assets sold, and that the liens will attach to the proceeds of sale . . . .
> . . . .
>     Asymblix's argument appears to be based on its view that the Taxing Authorities' liens were inferior in priority to [the Purchaser's] lien. . . . However, under the operation of the Texas Property Tax Code, the Taxing Authorities' liens are first priority liens senior to that of YA. *See* Tex. Prop. Tax Code §§ 32.01, 32.05. Because the Taxing Authorities' liens were senior to that of [the Purchaser], [the Purchaser's] credit bid would not wipe out the Taxing Authorities' liens, which, pursuant to the paragraphs of the [Sale Order], remain attached to the assets now owned by Asymblix.
>     Even if the sale did indeed eliminate the liens of the Taxing Authorities, those liens then attached to the proceeds of sale pursuant to the provisions of the [Sale Order]. Because [the Purchaser] acquired the assets by credit bid, all "proceeds" of the sale were received by [the Purchaser]. However, because the Taxing Authorities' liens were senior to those of [the Purchaser], [the Purchaser] received those proceeds encumbered by the Taxing Authorities' liens.
>     Having concluded that the Taxing Authorities' liens survived, I now turn to the question of whether I should determine the amount of taxes owing. I conclude that I should not.
>     Even assuming the bankruptcy court has the jurisdiction and competence to determine the taxes . . . , I would abstain from doing so. Not only are the state courts better situated to make such a determination, but the Case has been closed, the Taxing Authorities and Asymblix are remote from the Case, and proceedings have already commenced in state court. Given the circumstances, abstention would be appropriate.

itemized taxes, "Penalty Interest," and fees respecting the property for each of the three years in question and a total amount of $215,400.27 due to the intervenors.

Asymblix presented testimony of its chief financial officer respecting the bankruptcy proceeding described above, including testimony that TXP Corporation owned the property "between 2008 and 2010." Additionally, over appellees' objections as to relevance, several additional documents filed in the bankruptcy proceeding were admitted into evidence, including, among other things, a 2009 "proof of claim" of RISD showing a total amount due of $83,865.58.

During closing, counsel for RISD argued in part,

> I would also direct the Court to the provision in the Tax Code that provide [sic] that a certified copy of the entries on the delinquent tax roll constitutes a prima facie case with regards to the taxes, penalties and interest that are due. There has been no specific controverting testimony as to the amount of the taxes, the amount of the penalties, and the amount of the interest as calculated under statutory law.

The trial court signed a final judgment dated February 20, 2015. Therein, the trial court (1) awarded $215,264.40 to RISD and $215,400.27 to the intervenors; (2) stated that "the statutory and constitutional tax lien for each tax year exists upon [the property] securing the payment of said respective amounts"; and (3) granted RISD "all writs of execution and other process necessary to enforce this judgment."

Asymblix filed a motion for new trial in which it argued "even if the [trial court] found Asymblix, LLC had some liability on the ad valorem taxes, there is insufficient evidence to show the accurate amount of any damages." Specifically, according to Asymblix, (1) "no distinctions were made to show tax treatment during the automatic stay of the bankruptcy proceeding"; (2) Asymblix "cannot be held liable for any assessed penalties, fees and costs that may have been added while the entity was subject to bankruptcy protection"; and (3) "it is exceptionally unreasonable for the ad valorem taxes to be based on an inflated market value . . . that could not be protested during the bankruptcy proceeding."

RISD filed a response to Asymblix's motion for new trial in which it stated in part that the "valuation issues" described by Asymblix cannot be asserted in this lawsuit. Further, RISD argued (1) "Tex. Tax Code § 33.47 states that the introduction of the current and delinquent tax rolls or copies of the entries showing the property and the amount of the tax imposed constitute prima facie evidence of a taxpayer's liability and the burden shifts to the taxpayer to rebut this presumption"; (2) "once a certified copy of the entries on the delinquent tax roll is admitted, a prima facie case as to all amounts due is considered proved and statutory penalties must be included in the judgment"; (3) "RISD proved up a prima facie case of delinquent taxes, penalties, interest, and costs due and owing to RISD by Defendant, Asymblix LLC D/B/A IPhotonix as successor in interest to Texas Prototypes"; and (4) "Defendant has failed to rebut the presumption that the outstanding taxes (plus all penalties and interest that may ultimately accrue) are owed to Plaintiff."

After a hearing, the trial court denied Asymblix's motion for new trial. This appeal timely followed.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

A party challenging the legal sufficiency of the evidence to support an adverse finding on which it did not have the burden of proof at trial must demonstrate that there is no evidence to support the adverse finding. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). When reviewing for legal sufficiency, the evidence is considered in the light most favorable to the nonmovant, crediting evidence a reasonable fact-finder could credit and disregarding contrary evidence and inferences unless a reasonable fact-finder could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). We will uphold the finding if more than a scintilla of competent evidence supports it. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386,

388 (Tex. 2005); *Exel Transp. Servs., Inc. v. Aim High Logistics Servs., LLC*, 323 S.W.3d 224, 232 (Tex. App.—Dallas 2010, pet. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) ("The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.").

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on which it did not have the burden of proof, the appellant must demonstrate there is insufficient evidence to support the adverse finding. *See, e.g., Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 564 (Tex. App.—Dallas 2014, pet. denied). In reviewing a finding for factual sufficiency, we consider and weigh all of the evidence in support of and contrary to the finding and will set aside the finding only if it is so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### B. Applicable Law

A property tax, or "ad valorem" tax, is a tax on property at a certain rate based on the property's value. *See Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, No. 16-0626, 2018 WL 1974485, at *8 (Tex. Apr. 27, 2018). "[T]he Property Tax Code provides that on January 1, the day that property ownership gives rise to property tax liability, a tax lien in favor of each applicable taxing unit automatically attaches to all taxable property 'to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property.'" *Id.* (citing TEX. TAX CODE ANN. § 32.01(a) (West 2015)). If property taxes become delinquent, a taxing unit may file suit to foreclose the lien securing payment of the taxes, to enforce personal liability for the taxes, or both. *See* TAX CODE § 33.41. A petition initiating a suit to collect a delinquent property tax is sufficient if it alleges that "the person sued owned the property on January 1 of the year for which the tax was imposed if the suit seeks to enforce personal liability" or "the person sued owns

the property when the suit is filed if the suit seeks to foreclose a tax lien." *Id*. § 33.43(a)(7)–(8).

Pursuant to tax code section 42.09(b), "[a] person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense: (1) if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed; or (2) if the suit is to foreclose a lien securing the payment of a tax on real property, that the property was not located within the boundaries of the taxing unit." *Id*. § 42.09(b). Additionally, section 33.47(a) of the tax code states,

> In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.

*Id*. § 33.47(a). "Taxing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012); *accord Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex. App.—Dallas 2001, pet. denied).

### C. Application of Law to Facts

In its first issue, Asymblix contends the trial court's judgment "should be overturned on factual and legal sufficiency grounds." Specifically, Asymblix asserts in part (1) appellees cannot rely on the section 33.47(a) presumption because Asymblix "challenged [appellees'] failure to identify the correct property owner and the failure to provide substantiation and underlying support for the alleged taxes owed"; (2) Asymblix has no liability for the amounts in question because it "purchased the assets of the prior owner out of bankruptcy and clear of all liens, debts, and encumbrances"; and (3) "[o]nce the tax statements were challenged, no evidence was presented to show how the penalties, interest and fees were determined or how they accrued."

RISD responds in part (1) Asymblix "acquired the property subject to ad valorem tax liens" as shown by the Sale Order and letter ruling; (2) "RISD asserted and presented evidence that Asymblix, LLC, successor in interest to Texas Prototypes, owed delinquent ad valorem taxes for business personal property for years 2008, 2009, and 2010"; (3) such evidence included "a certified delinquent tax record of the taxes, penalties and interest owed pursuant to Tex. Tax Code § 33.47(a)"; and (4) Asymblix "failed to identify evidence so overwhelmingly to rebut RISD's prima facie evidence of delinquent ad valorem taxes owed and the [trial] court's judgment is supported by sufficient evidence."

We begin by addressing the applicability of the section 33.47(a) presumption. *See* TAX CODE § 33.47(a). When a taxing authority in a delinquency suit introduces the tax records described in section 33.47(a) into evidence, "it establishes a prima facie case as to every material fact necessary to establish its cause of action." *Maximum Med. Improvement, Inc. v. Cty. of Dallas*, 272 S.W.3d 832, 835 (Tex. App.—Dallas 2008, no pet.). At that point, "a rebuttable presumption arises in the taxing authority's favor." *Pete Dominguez Enters., Inc. v. Cty. of Dallas*, 188 S.W.3d 385, 387 (Tex. App.—Dallas 2006, no pet.). "Once a prima facie case is established, the burden shifts to the taxpayer to introduce competent evidence that he has paid the full amount of taxes, penalties, and interest, or that there is some other defense that applies to his case." *Maximum Med.*, 272 S.W.3d at 835; *see also Estates of Elkins v. Cty. of Dallas*, 146 S.W.3d 826, 829 (Tex. App.—Dallas 2004, no pet.) ("Unless the taxpayer establishes independent reasons why the taxing authority should not recover, the taxing authority is entitled to judgment."). "The presumption created by section 33.47 disappears if and when the taxpayer meets its burden of producing competent evidence to justify a finding against the presumed fact." *Aldine Indep. Sch. Dist. v. Ogg*, 122 S.W.3d 257, 264 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *accord Estates of Elkins*,

146 S.W.3d at 830 ("The presumption places upon the party against whom it operates the burden of producing evidence sufficient to justify a finding of non-existence of the presumed fact . . . .").

Asymblix contends (1) "[w]hen, as here, the taxing unit names some other person or entity as owing the delinquent taxes and Asymblix, LLC objects, the presumption is inapplicable,"; (2) even if appellees established a prima facie case and the burden shifted, Asymblix "offered evidence to rebut that presumption of accuracy or liability"; and (3) "penalties, fees and costs were improperly made part of the calculations during the bankruptcy's automatic stay." Appellees respond in part (1) they do not dispute that Asymblix was not the owner of the property on January 1 of any of the three tax years in question; (2) "[o]wnership in relevant years is irrelevant" because "liability was transferred by Court Order"; and (3) "[n]o evidence whatsoever was presented to dispute the evidence admitted by the [trial] court."

As to Asymblix's assertion that the section 33.47(a) presumption is inapplicable because the identity of the entity on the certified tax statement produced by RISD, i.e., "Texas Prototypes," did not match the identity of the defendant, that same argument was considered and rejected in *Felt v. Harris Cty.*, No. 14-12-00327-CV, 2013 WL 1738604 (Tex. App.—Houston [14th Dist.] Apr. 23, 2013, no pet.) (mem. op.). In *Felt*, Harris County sued David J. Felt for delinquent ad valorem taxes for tax years 1987–2009. *Id*. at *1. At trial, the county produced (1) a certified delinquent tax statement on which the property owner was identified as Equi-Share, Inc., and (2) a certified copy of a 1983 warranty deed in which Equi-Share, Inc. conveyed the property to Felt. *Id*. The trial court ruled in favor of the county and Felt appealed. On appeal, the parties disputed whether the section 33.47(a) presumption applied. Felt argued "[i]f the identity of the entity named as owner of the property on that tax roll does not match the identity of the defendant sued for non-payment, then no presumption [of compliance with the law] arises and no prima facie case is established by the taxing authority." *Id*. at *3. However, the court of appeals stated "there is a

difference between prima facie evidence of a material fact in the case and prima facie evidence of *every* material fact." *Id.* (emphasis original). Then, the court of appeals reasoned as follows:

> We agree that the certified delinquent-tax statement did not give rise to a presumption that Felt owned the property, but on the question of ownership, the County did not rest its case solely on a presumption. The tax statement created a presumption that Equi-Share, Inc. owned the property, but the County also introduced and relied on a certified copy of a warranty deed conveying the property to Felt in 1983, and on Felt's notarized signature on the deed. . . . As for the amounts at issue, a certified delinquent-tax statement is prima facie evidence of the amount of penalties, tax, and interest, and on those matters, the County relied solely on the presumption under section 33.47(a) that these amounts are due, delinquent, and unpaid. Felt offered no evidence to rebut that presumption, which is not undermined by the misidentification of the property's owner.

*Id.*

In the case before us, Asymblix does not cite or address *Felt*, but rather cites two cases from this Court. *See Maximum Med.*, 272 S.W.3d at 832; *Pete Dominguez*, 188 S.W.3d at 385. However, unlike *Felt* and the case before us, neither of the cases cited by Asymblix (1) involved evidence of liability other than a certified tax statement naming an entity that was not the defendant or (2) addressed whether the section 33.47(a) presumption arose as to the amounts due even if such presumption was inapplicable as to liability. *See Maximum Med.*, 272 S.W.3d at 835 ("If, however, the identity of the entity named as the owner does not match the identity of the defendant sued for non-payment, no presumption arises as to the defendant's liability."); *Pete Dominguez*, 188 S.W.3d at 388 ("In the absence of evidence showing the defendant, PDE, owned the property taxed in this case, no presumption of liability was triggered, and no prima facie case for liability was established."). Therefore, those cases do not provide guidance as to the facts before us. Rather, the record before us shows that, as in *Felt*, appellees provided evidence of liability other than RISD's certified tax statement, i.e., the Sale Order and letter ruling. Further, as to the "accuracy" of the amounts owed, Asymblix cites no evidence, and we have found none, showing the purported dates of the stay described by Asymblix or how much, if any, of the amounts due correspond to the time

period during which such stay was allegedly in effect. On this record, we conclude that even assuming without deciding that the section 33.47(a) presumption was inapplicable as to liability, the presumption arose and was not rebutted as to the amounts due. *See Felt*, 2013 WL 1738604, at *3; *see also Ogg*, 122 S.W.3d at 264 ("The presumption created by section 33.47 disappears if and when the taxpayer meets its burden of producing competent evidence to justify a finding against the presumed fact."); *Gillum v. Harris Cty.*, No. 01-08-00551-CV, 2009 WL 3400960, at *5 (Tex. App.—Houston [1st Dist.] Oct. 22, 2009, no pet.) (mem. op.) (concluding section 33.47(a) presumption was not rebutted where appellant offered no evidence to support her contentions challenging presumption).

Next, we address Asymblix's arguments respecting the legal and factual sufficiency of the evidence respecting liability. To the extent Asymblix relies on its assertion of an affirmative defense pursuant to tax code section 42.09(b)(1), that section provides "[a] person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense: (1) if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed." *See* TAX CODE § 42.09(b)(1). However, the petitions described above do not show appellees sought to enforce personal liability against Asymblix for the taxes in question. Therefore, section 42.09(b)(1) is inapplicable.[3] *See Hydrogeo, LLC v. Quitman Indep. Sch. Dist.*, 483 S.W.3d 51, 60–61 (Tex. App.—Texarkana 2016, no pet.); *United Indep. Sch. Dist. v. U.S. Trailer Relocators, LLC*, No. 04-17-00281-CV, 2018 WL 2943821, at *4 (Tex. App.—San Antonio June 13, 2018, no pet. h.).

---

[3] Also, Asymblix asserts in part that pursuant to tax code section 33.43(a)(7), "[a] petition initiating a suit to collect a delinquent property tax is only deemed sufficient if it alleges that . . . the person sued owned the property on January 1 of the year for which the tax was imposed if the suit seeks to enforce personal liability." *See* TAX CODE § 33.43(a)(7). However, to the extent Asymblix contends the petitions in this case were thus not "sufficient," we disagree. As described above, section 33.43(a)(8) provides that a petition initiating a suit to collect a delinquent property tax is sufficient if it alleges that "the person sued owns the property when the suit is filed if the suit seeks to foreclose a tax lien." *Id*. § 33.43(a)(8). The record shows the petitions in this case met that requirement.

Additionally, Asymblix contends it purchased the property "clear of all liens, debts, and encumbrances" and "[i]t is clear that [appellees'] interests were totally excluded from the Sale Order." In support of that argument, Asymblix cites various provisions of the Sale Order and the federal bankruptcy code. RISD responds in part (1) its claim against Asymblix "is based on the liability transferred to Asymblix LLC under an order of the Bankruptcy Court, which was not appealed and was in fact reinforced by a second order also not appealed," and (2) "[t]hat transfer of liability to Asymblix, LLC is the result of a Final Order of a Federal Court and not subject to collateral attack."

"A collateral attack is an attempt to avoid the effect of a judgment 'in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against.'" *Dallas Cty. Tax Collector v. Andolina*, 303 S.W.3d 926, 930 (Tex. App.—Dallas 2010, no pet.) (quoting *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)). "Only a void judgment may be collaterally attacked." *Browning*, 165 S.W.3d at 346. "A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id*.

In the case before us, Asymblix does not contend, and the record does not show, that the Sale Order or letter ruling were "void." *See id*. Therefore, any collateral attack is improper. *Id*. As described above, the bankruptcy court's letter ruling "concluded that the Taxing Authorities' liens survived" the sale of the property. Specifically, the bankruptcy court stated in part (1) "[b]ecause the Taxing Authorities' liens were senior to that of [the Purchaser], [the Purchaser's] credit bid would not wipe out the Taxing Authorities' liens, which, pursuant to the paragraphs of the [Sale Order], remain attached to the assets now owned by Asymblix," and (2) "[e]ven if the sale did indeed eliminate the liens of the Taxing Authorities, those liens then attached to the proceeds of

sale pursuant to the provisions of the [Sale Order]" and "because the Taxing Authorities' liens were senior to those of [the Purchaser], [the Purchaser] received those proceeds encumbered by the Taxing Authorities' liens." The record shows Asymblix's argument on appeal that it purchased the property clear of all liens, debts, and encumbrances "necessarily calls into question certain legal implications" of the Sale Order, which implications were addressed by the bankruptcy court in the letter ruling. *See Andolina*, 303 S.W.3d at 931; *see also Browning*, 165 S.W.3d at 346–47. Therefore, we conclude that argument constitutes an impermissible collateral attack. *See Andolina*, 303 S.W.3d at 931; *Browning*, 165 S.W.3d at 347. Accordingly, rather than allowing such an attack, we give finality to the bankruptcy court's ruling described above that the tax liens in question encumbered the property after the sale. *See Browning*, 165 S.W.3d at 345 ("policy of finality" underlying impermissibility of collateral attacks "is especially important in a Chapter 11 bankruptcy"). On this record, we conclude the evidence is legally and factually sufficient to support Asymblix's liability for the amounts in question. *See Haggar Clothing Co.*, 164 S.W.3d at 388; *Cain*, 709 S.W.2d at 176.

We decide against Asymblix on its first issue.

## III. DENIAL OF MOTION FOR NEW TRIAL

### *A. Standard of Review and Applicable Law*

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *See, e.g., Celestine v. Dep't of Family & Protective Servs.*, 321 S.W.3d 222, 235 (Tex. 2010).

A trial court may grant a new trial for good cause on the motion of a party or on the court's own motion. TEX. R. CIV. P. 320. "New trials may be granted when the damages are manifestly too small or too large." *Id*.

### B. Analysis

In its second issue, Asymblix contends the trial court's denial of its motion for new trial constituted an abuse of discretion. Specifically, Asymblix asserts (1) it "rebutted the taxing authorities' presumption of prima facie evidence of taxes due"; (2) "[t]here is insufficient evidence to show the validity of the interest, penalties and fees assessed"; (3) "[d]amages were manifestly too high"; and (4) "there was conflicting evidence on market value creating a fact issue."

The first and second of those assertions were specifically addressed in the above analysis pertaining to Asymblix's first issue. Further, in its appellate argument respecting its assertion that the damages awarded were "manifestly too high," Asymblix cites Texas Rule of Appellate Procedure 33.1(d), *see* TEX. R. APP. P. 33.1(d) ("Sufficiency of Evidence Complaints in Nonjury Cases"), and challenges the evidentiary support for those damages. That challenge was likewise addressed in our analysis above. Based on our conclusions above, we conclude the trial court did not abuse its discretion by denying Asymblix's motion for new trial on any of those three grounds. *See Celestine*, 321 S.W.3d at 235. Additionally, as to "conflicting evidence on market value," a defendant "may not challenge the property's appraised value in a suit to collect delinquent taxes." *Barnett v. Cty. of Dallas*, 175 S.W.3d 919, 923 (Tex. App.—Dallas 2005, no pet.) (citing TAX CODE § 42.09); *accord City of Bellaire v. Sewell*, 426 S.W.3d 116, 121–22 & n.3 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

We decide against Asymblix on its second issue.

## IV. CONCLUSION

We decide against Asymblix on its two issues. The trial court's judgment is affirmed.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE


180433F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ASYMBLIX, LLC D/B/A IPHOTONIX,
Appellant

No. 05-18-00433-CV  V.

RICHARDSON INDEPENDENT
SCHOOL DISTRICT, CITY OF
RICHARDSON, AND DALLAS
COUNTY, Appellees

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. TX-12-40481.
Opinion delivered by Justice Lang. Justices
Myers and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees RICHARDSON INDEPENDENT SCHOOL DISTRICT, CITY OF RICHARDSON, AND DALLAS COUNTY recover their costs of this appeal from appellant ASYMBLIX, LLC D/B/A IPHOTONIX.

Judgment entered this 3rd day of July, 2018.